**ELITE AUTO BODY LLC, d/b/a Precision Auto Body; Rey R. Hernandez; Yesica Diaz; and David Damian, Appellants**

**v.**

**AUTOCRAFT BODYWERKS, INC., now known as Wasson Road Ventures, Inc. d/b/a Autocraft Bodywerks, Appellee**

**NO. 03–15–00064–CV**

Court of Appeals of Texas, Austin.

Filed: May 5, 2017

Rehearing Overruled May 25, 2017

Rick Harrison, Waller Lansden Dortch & Davis, LLP, Shannon King, Austin, TX, for Appellants.

James G. Ruiz, Austin, TX, for Appellee.

Before Chief Justice Rose, Justices Pemberton and Field

## OPINION

Bob Pemberton, Justice

This case illustrates that the Texas Citizens Participation Act (TCPA),[1] as written—and as the Texas Judiciary, therefore, is bound to apply it—can potentially be invoked successfully to defend against claims seeking to remedy alleged misappropriation or misuse of a business's trade secrets or confidential information. This is so principally because the "communications" protected by the TCPA, and which

---

1. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001– .011.

in turn can serve as the predicate for a motion to dismiss a "legal action" under that Act, are not confined solely to speech that enjoys constitutional protection. Any remaining doubts to the contrary were extinguished by the Texas Supreme Court's recent opinion in *ExxonMobil Pipeline Company v. Coleman*.[2]

## BACKGROUND

The underlying litigation was initiated by appellee Autocraft Bodywerks, Inc., which describes itself as an Austin-based "auto-repair shop that offers full-service, high-end collision restoration to all makes and models of vehicles." The defendants (appellants here) consist principally of a competing auto-repair business, Elite Auto Body L.L.C. (d/b/a "Precision Auto Body") (Precision); Rey R. Hernandez, a one-time Autocraft employee who founded Precision in 2008 or 2009; and David Damian, "a production manager who had been with Autocraft for six years" before leaving in 2014 to join Precision.[3] An additional Autocraft employee, Joyce Garcia, "Autocraft's office manager of nine years," also left that company to join Precision in 2014. Although not naming Garcia as a defendant, Autocraft accuses her and Damian of furnishing their new employer "confidential, proprietary, and trade secret information" they had acquired through their former "positions of trust and confidence" with Autocraft—including salary and other personnel information, financial information,

"[p]roprietary compilation[s]" of "Technical Service Bulletins ('TSBs')," and "[p]roprietary client forms, such as payment sheets and vehicle check lists." In turn, Autocraft complains, Precision and its employees have used the information to "obtain an unfair competitive advantage in the marketplace" and "to convince more employees to leave Autocraft and join [Precision]." Based on these allegations, Autocraft sought injunctive relief to restrain appellants' alleged impending or ongoing use or disclosure of Autocraft's "confidential and proprietary information and trade secrets," plus actual and exemplary damages, founded on theories of trade-secret misappropriation and violation of the Texas Uniform Trade Secrets Act,[4] unfair competition, breach of fiduciary duty, and civil conspiracy.

Alongside the more traditional litigation responses of a general denial, affirmative defenses, and a counterclaim seeking attorney's fees for Autocraft's alleged bad-faith claim of misappropriation,[5] appellants invoked the TCPA, seeking dismissal of Autocraft's suit on grounds that this "legal action" "is based on, relates to, or is in response to" appellants' "exercise of the right of . . . association" and the "exercise of the right of free speech"[6] in their pursuit of Precision's business. To meet their initial burden of establishing these grounds "by a preponderance of the evidence,"[7] appellants relied on two basic

---

**2.** 512 S.W.3d 895 (Tex. 2017) (per curiam). Because *Coleman* presented this and other potentially outcome-dispositive implications for this appeal, and in turn for this appeal's implications for the larger jurisprudence, we deferred our decision pending *Coleman's* guidance.

**3.** The remaining defendant and appellant, Yesica Diaz, was alleged to have an ownership interest in Precision and, with Hernandez, to have participatory and vicarious liability for

the acts of "Damian and other former Autocraft employees."

**4.** *See* Tex. Civ. Prac. & Rem. Code §§ 134A.001–.008.

**5.** *See id.* § 134A.005(1).

**6.** *See id.* § 27.003(a).

**7.** *See id.* § 27.005(b). Because the TCPA's procedural framework has been explored exten-

theories. First, citing Autocraft's petition, appellants urged that each of Autocraft's claims "is based on, relates to, or is in response to"—in the sense of arising from or being predicated upon factually—either or both the "exercise of the right of association" or the "exercise of the right of free speech," as the TCPA defines those activities. Second, relying on affidavits from Hernandez and Damian that purport to negate any trade-secret or other protected status of the information at issue,[8] appellants accused Autocraft of also bringing its suit as a groundless pretext calculated only to harass and chill their "association" and "speech"; i.e., with the motives characteristic of "SLAPP" litigation, as opposed to merely being subject to dismissal under the TCPA.[9]

Autocraft filed a response in opposition to the motion, attaching an affidavit from its founder and general manager.[10] The chief thrust of the response and affidavit was to urge that the Autocraft information in question did in fact consist of trade secrets and other legally protected information. In turn, Autocraft urged that its claims for relief were "not a SLAPP suit"

and were "no threat to [appellants'] rights to free speech [or] right of association."

At the hearing on their motion, appellants sought to present live testimony from Hernandez and Damian to further contest the information's protected status in reply to Autocraft's affidavit. The district court excluded the testimony, in the view that the TCPA confined the court's inquiry solely to the "evidence" of pleadings or affidavits that the Act explicitly references.[11] Without objection, however, appellants' attorney was permitted to testify as to the attorney's fees and expenses they had incurred in defending the action.

Following the hearing, the district court signed an order denying appellants' motion. This appeal ensued.[12]

## ANALYSIS

Appellants bring three issues, the first of which is the most pivotal for both this case and the larger jurisprudence. In it, appellants urge that the district court erred in holding that they failed to meet their initial burden on their dismissal motion. We agree in part.

---

sively in numerous prior opinions, we will assume the reader's familiarity by now with its basic features.

8. For example, the affiants asserted that the information was widely known in the auto-repair industry, had not been kept confidential within Autocraft, and that none of appellants had ever executed any contract imposing duties of confidentiality. Each affiant, incidentally, also attributed Autocraft's loss of personnel to perceived abusive and unethical treatment of employees by Autocraft's founder and general manager.

9. "SLAPP" is an acronym for a "Strategic Lawsuit Against Public Participation," which refers, generally speaking, to a meritless lawsuit that is aimed only at deterring free expression through the collateral impacts of the litigation process in itself. The TCPA is said to

be an "anti-SLAPP" law. See, e.g., Serafine v. Blunt, 466 S.W.3d 352, 365–67 (Tex. App.– Austin 2015, no pet.) (Pemberton, J., concurring) (summarizing TCPA anecdotal legislative history and emphasis on "anti-SLAPP" concerns).

10. Appellants objected to this affidavit as "conclusory" and incompetent, though they did not obtain a ruling on these objections from the district court.

11. See Tex. Civ. Prac. & Rem. Code § 27.006(a) ("In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.").

12. See id. § 51.014(a)(12).

■ In the posture of their motion, appellants' initial burden (also described in case law in terms of demonstrating the TCPA's "applicability"[13]) consisted of "show[ing] by a preponderance of the evidence" (1) that Autocraft had asserted a "legal action" (2) that "is based on, relates to, or is in response to" (3) either the "exercise of the right of association" by appellants or their "exercise of the right of free speech."[14] The precise meaning of the phrase "preponderance of the evidence" within the TCPA's procedural framework remains unclear,[15] as do the standards by which appellate courts are to review these "preponderance-of-the-evidence" determinations by trial courts.[16] We can conclude

13. *See, e.g., Coleman*, 512 S.W.3d at 897–98, 898–902, 2017 WL 727274, at *1, *2–4, 2017 Tex. LEXIS 215, at *2, *7–14.

14. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b).

15. The TCPA contemplates primary reliance, but perhaps not always exclusive reliance, on "evidence" consisting only of pleadings and affidavits. *See id.* § 27.006(a) ("In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."); *cf. id.* § 27.006(b) (allowing for "specified and limited discovery relevant to the [dismissal] motion"—perhaps implying resort to additional proof—but only upon a trial-court order "on a showing of good cause"); *id.* § 27.007(a) (requiring additional "findings" on movant's request regarding underlying intent or motive of "legal action," including whether it was brought to chill exercise of constitutional rights or for an "improper purpose," facts that would tend often to require proof beyond the pleadings and affidavits).

16. *See Sloat v. Rathbun*, 513 S.W.3d 500 (Tex. App.–Austin 2015, pet. dism'd) (noting uncertainty as to whether "preponderance of the evidence" as used in TCPA denotes, as the phrase typically does, "that a fact finder (here the trial court) ascertains facts based on its assessment of the weight and credibility of competing evidence, including live testimony, with appellate review that correspondingly views the evidence in the light most favorable to the explicit or implicit fact findings supporting the trial court's order" or " 'contemplate[s] an analysis more closely akin to that governing evidence-based pleas to the jurisdiction under *Texas Department of [Parks &] Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004),' under which 'the factual allegations in the claimant's petition are liberally construed in favor of jurisdiction, presumed true unless negated by evidence, and any evidence is viewed in the light must favorable to the claimant' " (quoting *Serafine*, 466 S.W.3d at 369 n.28 (Pemberton, J., concurring))). Some of our sister courts have suggested a third alternative, termed a "neutral" or "de novo" review. *See, e.g., Tatum v. Hersh*, 493 S.W.3d 675, 681 n.4 (Tex. App.–Dallas 2015, pet. granted) (noting "the [appellants] prevail even under our neutral, plain-language review of their live pleading"); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 WL 1120921 at *8, 2015 Tex. App. LEXIS 2359 at *24 (Tex. App.–Fort Worth Mar. 12, 2015, no pet.) (mem. op.) (applying purely "de novo" standard of review to evaluate "whether ... the movant satisfied the initial burden imposed by section 27.005(b)" (citation omitted) (quotation marks omitted)).

Portions of the Texas Supreme Court's analysis in *ExxonMobil Pipeline Company v. Coleman* seem to suggest a de novo review of affidavit testimony, or at least one that did not credit any inferences in favor of the nonmovant, who had also prevailed in the trial court. *See Coleman*, 512 S.W.3d at 901–02, 2017 WL 727274, at *4, 2017 Tex. LEXIS 215, at *12–13 ("Coleman fails to cite a provision of the TCPA, or a Texas court interpreting the statute, that provides support for the proposition that a plaintiff's conclusory assertion that the defendant's affidavit testimony is untrue defeats the Act's applicability. Similarly, we are not convinced that because a pre-printed form lacks specific reference to the issues identified by the Legislature as matters of public concern, we should ignore evidence suggesting that the user-provided statements added to the form constitute communications in connection with a matter of public concern."); *cf.* Respondent's Brief on the Merits, at 6, 8, 16–18, *Coleman*, 2017 TEX. LEXIS 215 (No. 15-0407) (citing conventional concept of "preponderance of the evidence"—

with certainty, however, that to the extent the evidence establishes material facts conclusively, our review would be limited to the de novo construction and application of the TCPA's terms.[17] That proves to be the situation here.

There is no question that Autocraft's lawsuit seeking injunctive and monetary relief, or alternatively each of its component claims for such relief, is a "legal action," a term that the TCPA defines to include "a lawsuit, cause of action, petition, ... or any other judicial pleading or filing that requests legal or equitable relief."[18] The remaining elements of appellants' initial burden can be met if, as appellees urge on appeal, Autocraft's claims are predicated factually on conduct that falls within either the "exercise of the right of association" by appellants or their "exercise of the right of free speech," as the TCPA defines those terms.[19] The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests,"[20] while the "exercise of the right of free speech" is "a communication made in connection with a matter of public concern."[21] Appellants have urged that Autocraft's lawsuit complains of their "exercise of the right of association," so defined, because "[a]ll of Autocraft's claims center upon [appellants'] communications as they promote and pursue their common interests in developing and maintaining a competitive auto body repair business." As for the "exercise of the right of free speech" implicated by the suit, appellants have reasoned that the suit complains of their "communications" concerning "a good, product, or service in the marketplace," subjects that are expressly included in a further TCPA definition of "matter[s] of public concern."[22]

The linchpin of both the "exercise of the right of association" and the "exercise of the right of free speech" definitions (and, for that matter, also the TCPA's definition of the remaining category of protected expression, the "exercise of the right to petition") is a "communication," and it is in regard to this element that the parties

"the greater weight of the credible evidence"—and urging that trial court "could have concluded," on the "disputed" and "competing affidavit statements," that "Exxon Mobil simply failed to establish the relationship [of the 'communications'] to a matter of public concern by a preponderance of the evidence"). But the supreme court did not profess to speak to that question directly.

17. See *Sloat v. Rathbun*, 513 S.W.3d 500, 503, 2015 WL 6830927, at *3, 2015 Tex. App. LEXIS 11537, at *7 (Tex.App.–Austin 2015) ("The ultimate question of whether a particular factual basis for a 'legal action' qualifies as expression within the TCPA's definitions is a question of law that we review de novo." (citing *Serafine*, 466 S.W.3d at 357; *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.–Houston [1st Dist.] 2013, pet. denied)).

18. See Tex. Civ. Prac. & Rem. Code § 27.001(6).

19. See, e.g., *Sloat*, 513 S.W.3d at 503, 2015 WL 6830927, at *2, 2015 Tex. App. LEXIS 11537, at *6 ("In applying these standards, Texas courts—including this one—have generally focused solely on the extent to which the factual bases of a challenged 'legal action' constitute expression within the TCPA's definitions of [protected expression]." (citing *Combined Law Enforcement Ass'ns of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 Tex. App. LEXIS 1098, at *13–16, 2014 WL 411672, at *5 (Tex. App.–Austin Jan. 31, 2014, pet. denied) (mem. op.); *Serafine*, 466 S.W.3d at 373 (Pemberton, J., concurring)).

20. Tex. Civ. Prac. & Rem. Code § 27.001(2).

21. *Id.* § 27.001(3).

22. *Id.* § 27.001(7) (" 'Matter of public concern' includes an issue related to: ... a good, product, or service in the marketplace.").

have chiefly joined issue. They first dispute whether Autocraft's claims are predicated factually on any "communication." Autocraft insists that its claims seek only to remedy theft and misuse of its trade secrets and confidential information, which it views as conduct distinguishable from any "communications" or free expression. Appellants maintain that the claims implicate "communications" as that term is used in the TCPA. Underlying these respective positions are competing views regarding the meaning and scope of "communication" under the TCPA.

"Communication" is itself a defined term under the TCPA, and the definition "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."[23] Applying this definition to Autocraft's live petition, Autocraft alleges some factual bases of its claims that could not be considered "communications" under the TCPA under any conceivable reading. Among these bases, Autocraft alleges that Damian breached a fiduciary duty by "misappropriating Autocraft's confidential and proprietary information, trade secrets and valuable work," conduct that in itself would not necessarily entail "the making or submitting of a statement or document in any form or medium." In the same category would be allegations that appellants are "using Autocraft's confidential, proprietary, and trade secret information," at least so long as such "use" would not entail "the making or submitting of a statement or document." To this extent, Autocraft's

claims could not be subject to TCPA dismissal, and there could be no error in the district court's denial of appellants' motion.[24] Yet it would also be true, at least under a literal reading of the "communication" definition, that Autocraft also bases each of its claims, at least in part, on two types of alleged "communications"—(1) appellants' "communications" (so defined) among themselves and others within the Precision enterprise through which they have allegedly shared or utilized the information that Autocraft claims is its trade secrets or confidential information; or (2) "communications" (so defined) by appellants to current Autocraft employees to induce them to leave Autocraft and come work for Precision.

Autocraft insists that the larger statutory context and "anti-SLAPP" purpose of the TCPA precludes a reading of "communications" that would extend to any of the factual bases for its lawsuit. Although the TCPA does not mention SLAPPs specifically, the Legislature did specify that the Act has the "purpose ... to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[25] The Texas Supreme Court has summarized this goal as "identify and summarily dispose of lawsuits designed only to chill First Amendment rights, [but] not ... dismiss

23. *Id.* § 27.001(1); *see* Tex. Gov't Code § 311.005(13) (" 'Includes' " and " 'including' " generally "are terms of enlargement and not of limitation or exclusive enumeration.").

24. *Cf. Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion,* 517 S.W.3d 212, 219 & n.23, No. 03-15-00498-CV, 2017 WL 875314, at *4 & n.23, 2017 Tex. App.

LEXIS 1818, at *10–11 & n.23 (Tex. App.–Austin Mar. 3, 2017, no pet.) (distinguishing between factual bases for claims that were challenged in TCPA dismissal motion versus factual bases that were not, and affirming denial of motion as to latter); *Serafine,* 466 S.W.3d at 359–60 (same).

25. Tex. Civ. Prac. & Rem. Code § 27.002.

meritorious lawsuits." [26] This ultimate aim of the TCPA, Autocraft reasons, implies two key limitations on the types of "communications" to which it can apply.

■ Autocraft initially insists that this overarching purpose, especially in light of the emphasis on SLAPPs during the TCPA's legislative development, reflects a concern with public participation in government, so as to exclude the sorts of private or internal "communications" that are at issue here. [27] The Texas Supreme Court has dispelled that notion in its *Lippincott* decision, holding squarely that "[t]he plain language of the [TCPA] imposes no requirement that the form of the communication be public." [28] And more

broadly, it is the text of the TCPA as *actually written*, not any externally professed "anti-SLAPP" goals of the Act's proponents, that controls judicial determination of the Act's meaning and scope.

Next, Autocraft urges that the TCPA has no application here because any "communications" implicated by its claims would not be protected by the First Amendment. [29] It refers us to cases that, in its view, establish that the First Amendment is not implicated by or otherwise does not prohibit generally applicable government restriction or sanction of unauthorized disclosure of trade secrets or other confidential information. [30] This outer

---

26. *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (citing Tex. Civ. Prac. & Rem. Code § 27.002).

27. *See, e.g.,* Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 2973, 82d Leg., R.S. (2011) (justifying TCPA's enactment as means of protecting "[c]itizen participation [that] is [at] the heart of our democracy").

28. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

29. Autocraft has not independently invoked or addressed the Texas Constitution's counterpart free-speech protection, and neither side has suggested any differences that would have substantive bearing on our analysis.

30. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 666, 668–72, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991) (holding that First Amendment did not preclude plaintiff from recovering damages under state promissory-estoppel claim for "newspaper's breach of a promise of confidentiality given to the plaintiff in exchange for information"); *United States v. Morison*, 844 F.2d 1057, 1069–70 (4th Cir. 1988) ("[I]t seems beyond controversy that a recreant intelligence department employee who had abstracted from the government files secret intelligence information and had wilfully transmitted or given it to one 'not entitled to receive it' as did the defendant in this case, is not entitled to invoke the First

Amendment as a shield to immunize his act of thievery. To permit the thief thus to misuse the Amendment would be to prostitute the salutary purposes of the First Amendment."); *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 575 N.E.2d 116, 120 (1991) ("[A]n attorney has no right under the First Amendment ... to disseminate information protected by the attorney-client privilege."); *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 94 (Minn. 1979) (rejecting First Amendment defense in trade-secrets case and noting that "a former employee's use of confidential information or trade secrets of his employer in violation of a contractual or fiduciary duty is not protected by the First Amendment"). *But see Ford Motor Co. v. Lane*, 67 F.Supp.2d 745, 750 n.6, 753 (E.D. Mich. 1999) (acknowledging that "[u]se of trade secrets in violation of a confidentiality agreement or in breach of a fiduciary duty is not protected by the First Amendment (citations omitted)," but holding that "[i]n the absence of a confidentiality agreement or fiduciary duty between the parties, [plaintiff's] commercial interest in its trade secrets and [defendant's] alleged improper conduct in obtaining the trade secrets are not grounds for issuing a prior restraint" (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir.1996))); Pamela Samuelson, *Principles for Resolving Conflicts Between Trade Secrets and the First Amendment*, 58 Hastings L.J. 777, 777–78 (2007) ("There is no consensus in the caselaw ... about whether trade secrets are categorically immune (or nearly so) from

bound of First Amendment protection would thus be similar to those this Court addressed (albeit in a different context) in *Ex parte Perry*.[31] We observed there that the United States Supreme Court has recognized certain " 'historic and traditional' " categories of speech that are considered susceptible to regulation without implicating First Amendment concerns.[32] Among these, as we explained, is " 'speech integral to criminal conduct,' "[33] such as that "soliciting illegal transactions or other crimes,"[34] that "incident to bribery or extortion,"[35] or " 'that uttered by a robber while ordering his victim to hand over the money.' "[36] The basic rationale underlying judicial recognition of this limitation, we observed, "is that the First Amendment does not prohibit government from 'mak[ing] a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.' "[37]

Appellants reply that the scope of the First Amendment is not the controlling consideration when construing and applying the TCPA. This is so, they reason, because the Act's definitions of protected expression are "considerably broader than what constitutional law may have otherwise covered." While "[t]he Legislature could have written the TCPA to apply only when a lawsuit is based on a party's exercise of constitutional rights, making the statute's scope coextensive with First Amendment doctrine," appellants insist, "the Legislature did not."

▪ The parties' competing arguments on this point present a pivotal question regarding the TCPA's construction on which the Justices of this Court have differed in prior cases. Although the TCPA's stated purpose is to serve "the *constitutional* rights of persons to petition, speak freely, associate freely, and otherwise par-

---

First Amendment scrutiny and whether preliminary injunctions forbidding disclosure of informational secrets should be considered prior restraints on speech."); *cf. Garth v. Staktek Corp.*, 876 S.W.2d 545, 549–50 (Tex. App.–Austin 1994, writ dism'd w.o.j.) (analyzing injunction restraining trade-secret misappropriation under Texas Constitution free-speech jurisprudence and holding that while injunction was a prior restraint, it was not unconstitutional, as "the trial court reasonably found that [defendant's] improper use of confidential information might imminently and irreparably harm [plaintiff]" and that "there appear[ed] to be no less restrictive method of protecting [plaintiff] than enjoining [defendant] from disseminating" plaintiff's confidential information).

**31.** 471 S.W.3d 63, 113–14 (Tex. App.–Austin 2015), *affirmed in part, reversed in part on other grounds*, 483 S.W.3d 884 (Tex. Crim. App. 2016).

**32.** *See id.* at 111 (quoting *United States v. Stevens*, 559 U.S. 460, 468–69, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010)).

**33.** *See id.* at 113 (quoting *Stevens*, 559 U.S. at 468–69, 130 S.Ct. 1577).

**34.** *Id.* (citing *United States v. Williams*, 553 U.S. 285, 297, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (regarding statute restricting pandering of child pornography) and *Ex parte Lo*, 424 S.W.3d 10, 16–17 & n.21 (Tex. Crim. App. 2013) (observing that offers to engage in illegal transactions, such as online solicitation of a minor, have been "routinely upheld as constitutional" against First Amendment challenges, as the speech at issue is merely the "vehicle" for the conduct the statute prohibits)).

**35.** *Id.* at 113–15 (citing, inter alia, *Sanchez v. State*, 995 S.W.2d 677, 687–88 (Tex. Crim. App. 1999)).

**36.** *Id.* at 113–14 (quoting *Sanchez*, 995 S.W.2d at 688 (quoting *United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976))).

**37.** *Id.* at 113 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834 (1949)).

ticipate in government," [38] the Act does not pursue this ultimate goal directly, aside from entitling a movant to "additional findings" as to "whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights," [39] which presumably are to inform a court's award of sanctions under the Act.[40] The primary means by which the TCPA advances its purpose is more circuitous—an expedited dismissal mechanism tied to a burden-shifting analysis "through which a litigant may require, by motion, a threshold testing of the merits of legal [actions] that are deemed to implicate the expressive interests protected by the statute." [41] Namely, the movant must first meet its initial burden to demonstrate "by a preponderance of the evidence" that a "legal action" "is based on, relates to, or is in response to" one of the TCPA-defined categories of protected expression—in essence, that the "legal action" is within a suspect class presumptively subject to dismissal—in which case the claimant can avoid dismissal of its "legal action" only if the nonmovant "establishes by clear and specific evidence a prima facie case for

each essential element of the claim in question." [42] The disagreement has concerned the degree of relationship between the TCPA's stated focus on constitutional rights and the range of "legal actions" that fall into the suspect category, most critically with respect to the Act's definitions of "exercise of the right of association," "exercise of the right of free speech," and "exercise of the right to petition."

Within each definition, none explicitly references or purports to incorporate the *constitutional* rights of association, speech, or petition, aside from a single component of the "exercise of the right to petition" definition that was the focus of this Court's recent *Long Canyon* decision.[43] Yet the fact that the terms being defined are the "exercise of *the right of association*," "exercise of *the right of free speech*," or "exercise of *the right to petition*" could be seen as signaling an overarching, contextual linkage to the technical meaning and established understandings that the constitutional "right of association," "right of free speech," or "right to petition" have acquired in the jurisprudence. Thus this Court's TCPA jurisprudence has yielded

---

**38.** Tex. Civ. Prac. & Rem. Code § 27.002 (emphasis added).

**39.** *Id.* § 27.007(a).

**40.** *See id.* § 27.009(a)(2); *see also id.* § 27.011(a) ("This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions.").

**41.** *Serafine*, 466 S.W.3d at 369 (Pemberton, J., concurring); *see id.* at 375 (observing that "the TCPA has some similarities to the procedural requirements under the Medical Liability Act, which seek to identify, quickly eliminate, and deter frivolous lawsuits against health care providers by requiring a plaintiff asserting a 'health care liability claim' to serve an 'expert report' early in the case sufficient to demonstrate the claim's potential

merit and presumes that failure 'means that the claim is either frivolous, or at best has been brought prematurely' " (citations and quotation marks omitted)).

**42.** *See* Tex. Civ. Prac. & Rem. Code § 27.005(b), (c).

**43.** *See id.* § 27.001(2)–(5), (7)–(9); *cf. id.* § 27.001(4) (" 'Exercise of the right to petition' means any of the following: ... (E) any other .communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state."); *see also Long Canyon*, 517 S.W.3d at 218–22, 2017 WL 875314, at \*4–5, 2017 Tex. App. LEXIS 1818, at \*12–13 (relying on this feature to hold, based on prevailing First Amendment case law, that pre-suit letter threatening litigation qualified . as "exercise of the right to petition").

corresponding divisions between (1) those who advocate what they view as straightforward adherence to the ordinary or plain meaning of the statutory text within the four corners of the Act's definitions, versus (2) those who insist the parameters of the constitutional "right of association," "right of free speech," or "right to petition" must equally inform how the definition's contents are read.[44] And the resolution of this debate has significant if not controlling implications for the parties' dispute as to whether "communications" under the TCPA extend beyond those that would be protected by the First Amendment.

Very recently, however, the Texas Supreme Court in *Coleman* seems to have put to rest any notion that any constitutional connotations of "right of association," "right of free speech," or "right to petition" should inform the meaning of the TCPA's corresponding "exercise of" definitions (a conclusion perhaps also hinted at, but not entirely clear from, its earlier *Lippincott* decision). *Coleman* concerned a defamation suit filed by a former employee of a pipeline company complaining of internal company statements and reports by coworkers that had led to his termination.[45] The internal statements and reports had accused the employee (Coleman) of falsely reporting that he had performed a regular check or "gauge" of the fluid volume in a storage tank containing petroleum products, when in fact he had not performed the procedure.[46] The defendants

(the pipeline company, ExxonMobil, and two of its employees who had made the statements or reports in question) filed a TCPA motion to dismiss, asserting in part that Coleman's claims complained of their " 'exercise of the right of free speech' " as the Act defines it, i.e., " 'communication[s] made in connection with a matter of public concern,' " namely, "an issue related to . . . health or safety," or "environmental [or] economic . . . well-being." [47] The trial court denied the motion, and the court of appeals affirmed, in the view that "[t]he communications at issue involve nothing more than an internal, personnel matter at Exxon and were not a matter of public concern." [48] While acknowledging evidence that the gauging procedure served in part to prevent spillage, detect leaks, and thereby prevent potential physical, environmental, or economic harm,[49] the court reasoned that these "potential consequences of Coleman's failure to gauge" did not "transform communications about a private employment matter into a public concern" because the communications in question "had only a tangential relationship to health, safety, environmental, and economic concerns" and did not explicitly mention "health, safety, the environment, or Exxon's economic interests." [50] The Texas Supreme Court reversed, holding that the defendants had shown by a "preponderance of the evidence" that Coleman's suit "is based on, related to, or in response to" their "exercise of the right of free

44. *Compare, e.g., Serafine*, 466 S.W.3d at 357 n.1, 359–60 (the former), *with id.* at 377–82 (Pemberton, J., concurring) (the latter).

45. *Coleman*, 512 S.W.3d at 898–902, 2017 WL 727274, at *2, 2017 Tex. LEXIS 215, at *2–5.

46. *See id.*

47. *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 845 (Tex. App.–Dallas 2015) (quoting Tex. Civ. Prac. & Rem. Code § 27.001(3); citing *id.* § 27.001(7)), *rev'd*, 512 S.W.3d 895 (Tex. 2017) (per curiam).

48. *Id.* at 846.

49. *See id.* at 843–44.

50. *Id.* at 846.

speech," as the TCPA defines it.[51]

The supreme court emphasized its earlier holding in *Lippincott* that the TCPA did not require that a "communication" be public in form.[52] In the context of deciding that issue in *Lippincott*, the *Coleman* court observed, it had stressed that " '[a] court may not judicially amend a statute by adding words that are not contained in the language of the statute,' " but instead " 'must apply the statute as written.' "[53] The court of appeals ran afoul of this admonition in *Coleman*, the high court reasoned, through "improperly narrow[ing] the scope of the TCPA by ignoring the Act's plain language and inserting the requirement that communications involve more than a 'tangential relationship' to matters of public concern" or a requirement that the communications explicitly mention these matters.[54] What the TCPA required, the supreme court continued, was "only that the defendant's statements are 'in connection with' issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature."[55] And in this regard, the supreme court rejected Coleman's argument that " 'in connection with' " should be construed to require " 'more than a tenuous or remote relationship,' " as an attempt to "read[ ] language into the statute that is not there."[56] "We do not substitute the words of a statute in order to give effect to what we believe a statute should say," the court emphasized, but "instead, absent an ambiguity, we look to the statute's plain language to give effect to the Legislature's intent as expressed through the statutory text."[57]

Applying the TCPA's text, so construed, the supreme court held that "[t]he statements, although private and among [the pipeline company's] employees, related to a 'matter of public concern' because they concerned Coleman's alleged failure to gauge tank 7840," and there was evidence that this process served, "at least in part, to reduce the potential environmental, health, safety, and economic risks associated with noxious and flammable chemicals overfilling and spilling onto the ground."[58] *Coleman* thus stands emphatically for the proposition that courts must adhere to a "plain-meaning" construction of the TCPA's text, notwithstanding an acknowledged expansiveness and breadth.[59] But of

---

51. *See Coleman*, 512 S.W.3d at 897–98, 899–902, 2017 WL 727274, at *1, *2–5, 2017 Tex. LEXIS 215, at *2, *6–15.

52. *Id.* at 899–901, at *3, 2017 Tex. LEXIS 215, at *10–11 (citing *Lippincott*, 462 S.W.3d at 509).

53. *Id.* at 899–901, at *3, 2017 Tex. LEXIS 215, at *10 (quoting *Lippincott*, 462 S.W.3d at 508).

54. *Id.* at 899–901, at *3, 2017 Tex. LEXIS 215, at *11.

55. *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)).

56. *Id.* at 899–902, at *3–4, 2017 Tex. LEXIS 215, at *12–13.

57. *Id.* at 901–02, at *4, 2017 Tex. LEXIS 215, at *13 (citing *Lippincott*, 462 S.W.3d at 509).

58. *Id.* at 901, at *4, 2017 Tex. LEXIS 215, at *14 (citing Tex. Civ. Prac. & Rem. Code § 27.001(A), (B) and *Lippincott*, 462 S.W.3d at 509 ("The plain language of the statute imposes no requirement that the form of the communication be public.")).

59. And the same reasoning would appear to be fatal to an alternative ground on which the movants had relied but the supreme court did not reach—the "exercise of the right of association." *See* at 902, at *4, 2017 Tex. LEXIS 215, at *14–15. The court of appeals had read a public-participation requirement into the Act's definition, citing the TCPA's broader purposes and what the court viewed as the "absurd results" of extending the "exercise of the right of association" to the activities in question. *See Coleman*, 464 S.W.3d at 847–48.

more critical importance for the case at hand and this Court's past internal debates is a feature of *Coleman* that was not entirely clear from the very brief *Lippincott* opinion—throughout its more extensive analysis of the TCPA's text in *Coleman*, the supreme court never suggested that the *constitutional* concepts of "freedom of speech" or "public concern" had any bearing on its "plain-meaning" construction of the TCPA's definitions of those terms.[60] *Coleman*'s analysis makes clear that this Court is to adhere to a plain-meaning, dictionary-definition analysis of the text within the TCPA's definitions of protected expression, not the broader resort to constitutional context that some of us have urged previously.

 And in *Coleman*'s wake, we must reject Autocraft's attempts to limit TCPA "communications" solely to those the First Amendment protects. The Act defines "communication" with no such limitation—again, it simply "includes" (a term of enlargement[61]) "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic,"[62] with no reference to constitutional rights or concepts. Consequently, in urging a First-Amendment limitation or overlay, Autocraft, in *Coleman*'s terms, is considered to be "reading language into the statute that

is not there."[63] We must instead give effect to the definition's "plain language" as written, and accordingly hold that "communications" under the TCPA extend to appellants' "making or submitting of . . . statement[s] or document[s] in any form or medium, including oral, visual, written, audiovisual, or electronic,"[64] without regard to whether, as Autocraft insists, their statements effected the misappropriation or misuse of its trade secrets or confidential information, or would be constitutionally unprotected. This conclusion is also consistent with the manner in which Texas courts have generally applied the TCPA when the "communication" in question is alleged to come within one of the other "historic and traditional" categories of speech whose content may be regulated without violating the First Amendment.[65] In *Kinney v. BCG Attorney Search, Inc.*, for example, this Court addressed an attempt by a defamation plaintiff to defeat, at the initial-burden stage, a TCPA dismissal motion asserted by the defendant, the plaintiff's premise being that the communications at issue were false and defamatory and thus not constitutionally protected.[66] We rejected that argument, reasoning that the TCPA did not make these issues and determinations a component of the movant's initial burden, but were instead appropriately addressed

**60.** *See Coleman*, 512 S.W.3d at 898–902, 2017 WL 727274, at *2–5, 2017 Tex. LEXIS 215, at *5–14.

**61.** *See* Tex. Gov't Code § 311.005(13).

**62.** Tex. Civ. Prac. & Rem. Code § 27.001(1).

**63.** *Coleman*, 512 S.W.3d at 901–02, 2017 WL 727274, at *4, 2017 Tex. LEXIS 215, at *12.

**64.** Tex. Civ. Prac. & Rem. Code § 27.001(1).

**65.** In addition to "speech integral to criminal conduct," these "historic and traditional" categories include "obscenity," "defamation,"

"fraud," and "incitement," *Stevens*, 559 U.S. at 468, 130 S.Ct. 1577, and " 'true threats,' " described as " 'those statements where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals.' " *Perry*, 476 S.W.3d at 111 (quoting *Virginia v. Black*, 538 U.S. 343, 359–60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003)).

**66.** No. 3–12–00579–CV, 2014 WL 1432012, at *4–6, 2014 Tex. App. LEXIS 3998, at *13–17 (Tex. App.–Austin Apr. 11, 2014, pet. denied) (mem. op. on reh'g).

within the "second part" of the analysis, in which the nonmovant must establish "by clear and specific evidence a prima facie case for each essential element of its claim." [67] Similarly, one of our sister courts has held that the issue of whether alleged " 'terroristic threats,' " " 'cyber-stalking,' " and " 'harassment' " were con-stitutionally protected speech "is not part of a defendant's initial burden under [S]ection 27.005(b) of the TCPA; instead, a plaintiff may offer proof of unprotected speech by a defendant as part of the plaintiff's clear and specific evidence of each essential element of each claim against the defendant." [68]

■ As previously indicated, Autocraft's claims complain, in part, of appellants' "communications" within the meaning of the TCPA definition—namely, "communi-cations" among appellants within the Pre-cision enterprise through which they have allegedly shared or used the Autocraft in-formation in question, as well as "commu-nications" by appellants to current Auto-craft employees aimed at luring them to

Precision. Autocraft further complains—indeed, it is the heart of Autocraft's case—that this alleged conduct by appellants, constituting "communications" within the TCPA definition, is in furtherance of the Precision business enterprise relative to Autocraft's competitive position. These facts satisfy the remaining elements of the "exercise of the right of association" defini-tion as we are to read them—the "commu-nications" are "between individuals who join together to collectively . . . promote, pursue, or defend common interests." [69] In sum, as to the "communications" that are made the basis for Autocraft's claims, ap-pellants met their initial burden to "show[ ] by a preponderance of the evidence" that Autocraft's "legal action" or actions "is based on, relates to, or is in response to" appellants' "exercise of the right of associ-ation." [70] To this extent, we sustain appel-lants' first issue and need not consider their alternative ground in reliance on the "exercise of the right of free speech." [71] This holding also obviates our need to

**67.** *Id.* at *5, 2014 Tex. App. LEXIS 3998, at *15 (citing Tex. Civ. Prac. & Rem. Code § 27.005(c) and *In re Lipsky*, 411 S.W.3d 530, 543 (Tex. App.–Fort Worth 2013, orig. pro-ceeding), *mand. denied*, 460 S.W.3d 579 (Tex. 2015)); *see In re Lipsky*, 411 S.W.3d at 543 ("[The TCPA] dictates that we should review evidence concerning whether [defendants'] statements were defamatory and thus action-able in the second part of our review, in which [real-parties-in-interest] ha[ve] the bur-den of establishing 'by clear and specific evi-dence a prima facie case for each essential element of the claim in question.' " (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c))).

**68.** *Rauhauser v. McGibney*, 508 S.W.3d 377, 384 n.4 (Tex. App.–Fort Worth 2014, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b), (c); *In re Lipsky*, 411 S.W.3d at 543); *see also Schimmel v. McGregor*, 438 S.W.3d 847, 859 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) (explaining that plaintiffs' argument—that their claims " 'based upon . . . fraud, misrepresentations

and illegal boycott, . . . [did] not implicate constitutional protections"—was "relevant to the second step of the inquiry—whether [plaintiffs had] demonstrated a prima facie case for relief on every essential element of their tortious interference claim" (citing *In re Lipsky*, 411 S.W.3d at 543)).

**69.** *See* Tex. Civ. Prac. & Rem. Code § 27.001(2). The requirement is met here re-gardless of whether the "exercise of the right of association" definition requires a nexus between the "communication" and advance-ment of the parties' "common interests." *See Long Canyon*, 517 S.W.3d at 225–27, 2017 WL 875314, at *9–10, 2017 Tex. App. LEXIS 1818, at *23–26 (Pemberton, J., concurring) (noting arguably conflicting cases as to whether this nexus is required).

**70.** *See* Tex. Civ. Prac. & Rem. Code § 27.001(2), § 27.005(b).

**71.** *See* Tex. R. App. P. 47.1.

address appellants' third issue, in which they urge, "in the unlikely event that this Court finds that [they] failed to meet their [initial] burden," that the district court abused its discretion in excluding the live testimony they sought to present during the hearing on their motion.

In their second issue, appellants attack a potential alternative ground for fully affirming the district court's order, urging that Autocraft failed to "establish[ ] by clear and specific evidence a prima facie case for each essential element of [each] claim in question." [72] In fact, appellants claim, Autocraft never even attempted this showing before the district court. Appellants are correct—aside from its general manager's affidavit purporting to demonstrate the protected status of the information in question, Autocraft presented no evidence in opposition to appellants' motion and never attempted to establish or address each essential element of its claims, focusing instead on challenging whether the TCPA applied in the first place. Although proof of the trade-secret or protected status of the information is relevant to and is properly addressed in this "second part" of the TCPA burden-shifting analysis, as previously explained, proof of that status alone would not be sufficient to survive dismissal, as the Legislature has unambiguously required a "prima facie case" "for *each* essential element" of each claim. [73] Further, this prima facie case for each essential element of each claim in question must be made with "clear and specific evidence." [74] While Autocraft attempts on appeal to recharacterize its affidavit as sufficing to survive dismissal, that proof falls below the element-by-element, claim-by-claim exactitude required by the TCPA and the Texas Supreme Court's leading guidance on this standard, *In re Lipsky*. [75]

Accordingly, the district court erred in failing to dismiss Autocraft's claims to the extent founded on appellants' "communications." In the event of such a holding, appellants request that we render a judgment of dismissal and also proceed to award attorney's fees, observing that they presented uncontroverted evidence of having incurred $15,250 in reasonable and necessary fees and expenses. While we agree that partial dismissal is appropriate, we remand the issue of attorney's fees to the district court. [76]

---

**72.** *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

**73.** *Id.* (emphasis added).

**74.** *Id.*

**75.** *See Lipsky*, 460 S.W.3d at 586–97. Autocraft similarly attempts to argue, for the first time on appeal, that its "legal action" is exempted from the Act by the so-called "commercial speech" provision, Section 27.010(b). This contention is waived by Autocraft's failure to raise it below, *see* Tex. R. App. P. 33.1; *see also Newspaper Holdings, Inc.*, 416 S.W.3d at 88–89 (holding that burden of proving TCPA exemption under Section 27.010 is with party claiming it), and it is unavailing in any event. Section 27.010(b) exempts from the TCPA "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, ... or an insurance product, insurance services, or a commercial transaction *in which the intended audience is an actual or potential buyer or customer*." Tex. Civ. Prac. & Rem. Code § 27.010(b) (emphasis added). The italicized phrase would render it inapplicable to Autocraft's claims here. *Cf. Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 354 (Tex. App.–Houston [1st Dist.] 2013, pet. denied) ("Because the intended audience of the [defendant's] statements and conduct ... is the consumer public at large, not the businesses to which the [defendant] attempts to 'sell' its membership services, [Section 27.010(b)] does not apply.").

**76.** *See Serafine*, 466 S.W.3d at 364 (similarly remanding issue of attorney's fees following partial TCPA dismissal on appeal).

## CONCLUSION

The district court did not err by failing to dismiss Autocraft's claims to the extent they are predicated factually on conduct by appellants that does not constitute "communications" as defined by the TCPA, and we affirm its order in that respect. Otherwise, we reverse the district court's order and render judgment dismissing Autocraft's claims. We remand the cause to the district court for further proceedings consistent with our resolution of the issues in this appeal, including its mandatory consideration of an attorney's-fee award.