**Affirmed and Memorandum Opinion filed February 23, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00138-CV

## KIM HOA HUYNH, KHOA DANG HUYNH, HENNY DUONG, AND HIEN DUONG, INDIVIDUALLY AND ON BEHALF OF SWAMPCITY, L.L.C., Appellants

### V.

## VIET D. FRANCOIS-LE AND MICHAEL-ANH D. LE, Appellees

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-89043**

## M E M O R A N D U M   O P I N I O N

Appellants Kim Hoa Huynh, Khoa Dang Huynh, Henny Duong, and Hien Duong (collectively, "Appellants"), individually and on behalf of SwampCity, L.L.C., sued appellees Viet D. Francois-Le and Michael-Anh D. Le (together, "Appellees"), seeking a declaratory judgment pertaining to the management of the parties' jointly-owned restaurant. Appellees filed counterclaims and Appellants moved to dismiss the counterclaims under the Texas Citizens' Participation Act

("TCPA"). The trial court denied the motion and Appellants filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). For the reasons below, we affirm.

## BACKGROUND

Appellants and Appellees are joint owners of SwampCity, L.L.C., a Cajun seafood restaurant in north Houston. Appellants collectively own 66.67% of SwampCity and Appellees jointly own the remainder. In fall 2018, the parties' working relationship began to deteriorate.

Appellants sued Appellees in December 2018, alleging Appellees improperly restricted Appellants' access to SwampCity's offices, records, and software systems. Appellants requested a declaratory judgment, a temporary restraining order, and a temporary and permanent injunction. The trial court granted a temporary restraining order and ordered Appellees to refrain from restricting Appellants' access to SwampCity's property.

Appellees assert counterclaims against Appellants for (1) conspiracy, (2) tortious interference with prospective business relations, and (3) conversion. Appellees allege that, while the parties were in the midst of negotiations for Appellees to buy out Appellants' interest in SwampCity, Appellants undertook a coordinated effort to damage the restaurant and its reputation. Specifically, Appellees allege Appellants committed the following acts:

- Kim Hoa Huynh's nephew removed from SwampCity a commercial grade mixer and ingredients.
- Several times, Henny Duong failed to show up for her shift at SwampCity or left abruptly during her shift.
- Kim Hoa Huynh's niece and nephew abruptly quit working at SwampCity without explanation.
- Kim Hoa Huynh stopped mixing SwampCity's seasonings and sauces

and refused to provide the recipe to Appellees.

- Appellants purchased equipment that was being utilized for purposes unrelated to SwampCity.

Appellants filed a TCPA motion to dismiss Appellees' claims. The trial court denied Appellants' motion in an order signed February 8, 2019. Appellants timely appealed.

## ANALYSIS

Challenging the trial court's denial of their TCPA motion to dismiss, Appellants raise three issues on appeal:

1. the TCPA applies to Appellees' conspiracy claim;
2. Appellees cannot establish a prima facie case as to each element of their conspiracy claim or the underlying torts; and
3. this case should be remanded for a determination of attorney's fees and sanctions.

Because the first issue is determinative of this appeal, we do not reach Appellants' second and third issues.

## I.      TCPA Framework

The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation". *Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence" their exercise of First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. The TCPA is not intended to bring about the dismissal of meritorious claims. *In re Lipsky*, 460 S.W.3d at 589.

The TCPA utilizes a three-step process.[1]  First, the burden is on the movant to show by a preponderance of the evidence that the challenged claim "is based on, relates to, or is in response to the [movant's] exercise of:  (1) the right of free speech; (2) the right to petition; or (3) the right of association."  Act of May 21, 2011, 82nd Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005).  Next, the burden shifts to the nonmovant to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question."  *Id*.  If the nonmovant satisfies this second step, the trial court nonetheless shall dismiss the challenged claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."  *Id*.

The trial court's ruling on a TCPA motion to dismiss is reviewed *de novo*.  *Roach v. Ingram*, 557 S.W.3d 203, 217 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).  Under this standard, we "make an independent determination and apply the same standard used by the trial court in the first instance."  *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (internal quotation omitted).  We review the pleadings and the relevant evidence in the light most favorable to the nonmovant.  *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

---

[1] The Texas Legislature amended the TCPA in its 2019 legislative session and the amendments are effective September 1, 2019.  Because this suit was filed before the effective date of the amendments, it is governed by the statute as it existed before the amendments and all of our citations are to the TCPA as it existed prior to September 1, 2019.  *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1-12, 2019 Tex. Gen. Laws 684, 684-87 (current versions at Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011); *see, e.g., HDG, Ltd. v. Blaschke*, No. 14-18-01017-CV, 2020 WL 1809140, at *3 n.2 (Tex. App.—Houston [14th Dist.] Apr. 9, 2020, no pet.) (mem. op.).

## II.     Right of Association

Addressing the first step of the TCPA process, Appellants assert they established by a preponderance of the evidence that Appellees' conspiracy claim is based on, relates to, or is in response to Appellants' exercise of the right of association.

The applicable version of the TCPA defines an exercise of the right of association as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."  Act of May 21, 2011, 82nd Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001).  We recently examined this definition at length in *Republic Tavern and Music Hall, LLC v. Laurenzo's Midtown Management, LLC*, __ S.W.3d __, 2020 WL 7626253 (Tex. App.—Houston [14th Dist.] Dec. 22, 2020, no pet. h.).  There, Midtown brought tort and contract claims against Republic and several third-party defendants in connection with a failed restaurant venture.  *Id*. at *1.  The Republic parties filed a TCPA motion to dismiss arguing Midtown's claims implicated their right of association.  *Id*. at *1, *4.

Analyzing this contention, we focused on which "common interests" fall within the TCPA's definition of "right of association."  *See id*. at *4-6.  Relying on an opinion from the Fort Worth Court of Appeals, we recognized that "common" generally is subject to a primary and secondary definition:

| | |
|---|---|
| Primary definition: | "'of or relating to a community at large <as a family unit, social group, tribe, political organization, or alliance>: generally shared or participated in by individuals of a community: not limited to one person or special group'" |

Secondary definition: "'marked by or resulting from joint action of two or more parties: practiced or engaged in by two or more equally.'"

*Id.* at \*5 (quoting *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 576 (Tex. App.—Fort Worth 2019, pet. denied)). As we noted, the secondary definition would broadly apply "to any interests common to at least two people." *Id.*

We examined these definitions in conjunction with the TCPA's purpose "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002). We concluded that "[a]pplying the primary definition of 'common' would serve the TCPA's purpose, whereas defining 'common' to refer to *any* interests shared by at least two people would not encourage or safeguard the right to associate freely and would undermine the statute's purpose of protecting the right to file meritorious lawsuits." *Id.* (emphasis in original).

Applying this conclusion, we noted that Midtown's claims were premised on the following "communications": (1) Midtown's contract with the Republic parties, (2) alleged representations by the Republic parties that they would fund construction and operation of the restaurant, and (3) disagreements about Midtown's accounting. *Id.* at \*6. Concluding these communications did not constitute an exercise of the right of association, we held that "[t]hese communications concern only a private transaction between private parties, rather than a matter of 'common interest' as that expression is used in the applicable version of the TCPA." *Id.*; *see also Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 653-54 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (relying on *Kawcak* and concluding that claims alleging

6

defendants conspired to commit theft or conversion did not implicate the defendant's exercise of the right of association);[2] *Kawcak*, 582 S.W.3d at 571, 588 (concluding that the exercise of the right of association was not implicated by claims that Kawcak and another individual conspired in tortious conduct such as a breach of fiduciary duty).

Similarly, in *Marshall v. Marshall*, Nos. 14-08-00094-CV, 14-18-00095-CV, 2021 WL 208459 (Tex. App.—Houston [14th Dist.] Jan. 21, 2021, no pet. h.) (mem. op.), we relied on the primary definition of "common" to conclude that breach of fiduciary duty claims premised on the merger of two private trusts did not implicate the TCPA's right of association. *See id*. at *1-2, *8. Holding that the TCPA's definition of the "exercise of the right of association" did "not encompass all communications in furtherance of a civil conspiracy or to commit tortious acts," we noted that applying a broader definition "would thwart a meritorious lawsuit any time a plaintiff alleges two or more persons jointly committed a tort." *Id*. at *8.

This construction aligns with conclusions reached by several of our sister courts of appeals, in which they held that the TCPA's use of "common interests" requires more than communications made as part of a private transaction. *See, e.g., Segundo Navarro Drilling, Ltd. v. San Roman Ranch Mineral Partners, Ltd.*, 612 S.W.3d 489, 493-96 (Tex. App.—San Antonio 2020, pet. denied) ("[l]ike the *Kawcak* Court, we conclude that this definition of 'common' — one that suggests a communal or public interest, rather than a private interest shared solely by a select

---

[2] As we noted in *Republic Tavern*, an argument can be made that this court's opinion in *Reeves v. Harbor America Central, Inc.*, __ S.W.3d __, 2020 WL 2026527 (Tex. App.—Houston [14th Dist.] Apr. 28, 2020, pet. filed), conflicts with our reasoning in *Bandin*. *See Republic Tavern*, 2020 WL 7626253, at *5 n.17. Assuming without deciding that such conflict exists, we held that "*Bandin*, as the earlier precedent, would control over later cases that do not distinguish or purport to apply it, absent a contrary decision by a higher court or this court sitting en banc." *Id*.

few — is more congruent with both the TCPA as a whole and with our canons of statutory construction"); *Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *6 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.) ("the term 'common interest,' as used in the TCPA, means something more than allegedly tortious communications between individuals in the pursuit of a private business endeavor"); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc) ("the proper definition of 'common' in the phrase 'common interests' is 'of or relating to a community at large: public'"; therefore, claims premised on the misappropriation of trade secrets for a competing business and conspiring to commit related torts did not fall within this definition); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 426-27 (Tex. App.—Dallas 2019, pet. denied) (citing *Kawcak* and concluding that, because the text messages underlying the claims "were private communications related to an alleged conspiracy between two men and did not involve public or citizen's participation, it would be 'illogical' to apply the TCPA to those communications").

Here, Appellants assert Appellees' conspiracy claim is premised on communications by Appellants that sought to advance their "common interest", *i.e.*, "their joint ownership and joint operation" of SwampCity. Appellees alleged that Appellants' communications organized a coordinated effort to damage the restaurant and its reputation via tortious conduct.

Guided by the precedents discussed above, Appellees' conspiracy claim does not implicate communications that promote "common interests" as that phrase is used in the TCPA's definition of "right of association." Rather, Appellants' alleged communications related to a private business endeavor (or the disruption thereof) — an interest shared only by a select few. These

8

communications facilitated an alleged conspiracy between four people to commit tortious acts affecting SwampCity's operations; they did not involve the public or the community at large. As such, the communications do not constitute an exercise of the right of association protected by the TCPA. *See Marshall*, 2021 WL 208459, at *8; *Republic Tavern*, 2020 WL 7626253, at *6; and *Bandin*, 590 S.W.3d at 653-54; *see also Segundo Navarro Drilling, Ltd.*, 612 S.W.3d at 493-96; *Blue Gold Energy Barstow, LLC*, 2020 WL 1809193, at *6; *Gaskamp*, 596 S.W.3d at 476; and *Dyer*, 573 S.W.3d at 426-27.

Appellants rely on several cases to support their contention that Appellees' conspiracy claim involves communications that advanced "common interests" as that term is used in the TCPA. One of these opinions was withdrawn and superseded by a case referenced above. *See Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2018 WL 6695810 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018), *withdrawn and superseded by Gaskamp*, 596 S.W.3d at 457.

Appellants also cite *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191 (Tex. App.—Austin 2017, pet. dism'd). There, the plaintiff asserted claims against the defendants (owners and employees of a competing business) for trade secret misappropriation, unfair competition, breach of fiduciary duty, and conspiracy. *Id*. at 194. Reversing in part the trial court's denial of the defendants' TCPA motion to dismiss, the Austin Court of Appeals concluded the plaintiff's claims implicated the defendants' right of association. *Id*. at 204-07.

But the Austin Court of Appeals did not analyze the phrase "common interests" as it is used in the TCPA's definition of "right of association" — rather, the court's decision focused on which "communications" fall within the TCPA's purview. *See id*.; *see also id*. at 206 (concluding "the district court erred in failing to dismiss [the plaintiff's] claims to the extent founded on [the defendants']

9

'communications'"). This decision preceded this court's opinions in *Marshall*, *Republic Tavern*, and *Bandin*, all of which focused on the definition of "common interests" and favorably cited *Kawcak*'s analysis on this point. *See Marshall*, 2021 WL 208459, at *8; *Republic Tavern*, 2020 WL 7626253, at *6; and *Bandin*, 590 S.W.3d at 649-50. Other courts have distinguished *Elite Auto Body* on these grounds. *See Segundo Navarro Drilling, Ltd.*, 612 S.W.3d at 495 (stating that *Elite Auto Body* did not "rest on a detailed analysis of the word 'common'"); *Gaskamp*, 596 S.W.3d at 471-72 (stating *Elite Auto Body* "indicated — without in-depth discussion — that the 'common interests' element of the exercise of the right of association was satisfied by private business interests being advanced through the tortfeasors' tortious conduct"); and *Kawcak*, 582 S.W.3d at 585 (stating *Elite Auto Body* did "not address the definition of 'common'"). Accordingly, *Elite Auto Body* does not control our analysis.

We overrule Appellants' first issue. Because Appellants failed to meet their initial burden under the TCPA to establish that Appellees' conspiracy claim is based on, related to, or in response to Appellants' exercise of their right of association, we need not consider their other issues on appeal.

CONCLUSION

We affirm the trial court's order denying Appellants' TCPA motion to dismiss.

/s/     Meagan Hassan
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.