Justice Keyes, concurring.
CONCURRING OPINION
Evelyn V. Keyes, Justice
As author of the panel opinion in this case, I question whether it was necessary to move to the second step of a two-step process for evaluating an improperly filed motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA) in order to affirm the trial court's denial of the TCPA motion. In my view, Universal Plant Services, Inc., and former employees of appellee Dresser-Rand Group, Inc.,-Ronald Fox, Jr., Adam Fuller, Ryan Hunt, and Timothy Riley (collectively, Former Employees)-failed to carry their initial burden pursuant to the TCPA to prove by a preponderance of the evidence that the rights they claim Dresser-Rand's suit against them infringed constituted rights protected by the First Amendment, as required by the TCPA and Texas Supreme Court law. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.002, 27.005 (West 2015) ; ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 899 (Tex. 2017) (per curiam).
It appears to be an open question in Texas law whether, if the first step of the two-step process for evaluating a TCPA motion to dismiss is not satisfied, the nonmovant must nevertheless establish a prima facie case for its claims under the second step. I would hold that it is not necessary and that this TCPA motion should have been dismissed on the pleadings as improperly filed without imposing upon the plaintiff, Dresser-Rand, the burden of proofing a prima facie case to substantiate its pleadings against Universal and the Former Employees. Both grounds, however, support affirming the trial court's denial of Universal and the Former Employees' TCPA motion to dismiss Dresser-Rand's suit.
A. Use of the TCPA as a Summary Dismissal Procedure
The stated purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ; see Hersh v. Tatum , 526 S.W.3d 462, 466 (Tex. 2017) ; Coleman , 512 S.W.3d at 898. The TCPA further expressly provides, "This chapter shall be construed liberally to effectuate its purpose and intent fully." Id. § 27.011(b) (West 2015).
The TCPA was intended to identify and summarily dispose of lawsuits "designed to chill First Amendment rights, not to dismiss meritorious lawsuits." In re Lipsky , 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding); Epperson v. Mueller , No. 01-15-00231-CV, 2016 WL 4253978, at *8 (Tex. App.-Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.). When applied correctly and in accordance with the express terms of the Act, the TCPA "protects citizens ... from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms *365 and provides a procedure for the "expedited dismissal of such suits." See In re Lipsky , 460 S.W.3d at 586 ; Epperson , 2016 WL 4253978, at *8.
Nevertheless, the TCPA has come be construed so expansively as to operate as a de facto summary dismissal procedure not only for retaliatory suits but for meritorious lawsuits that cannot colorably be construed as chilling First Amendment rights. And, even if the TCPA motion does not ultimately succeed, it can be used, as currently construed, to delay and to put plaintiffs in meritorious suits to the burden of defending themselves against frivolous TCPA motions by being forced to meet the threshold burden of proving a prima facie case. That cannot be the intent of the TCPA, and it is not.
That is the case here, where Universal and the Former Employees, as the TCPA movants, made no serious showing that they had a constitutionally protected right to participate in government by engaging in the behavior alleged by Dresser-Rand in its petition-breaching the confidentiality clause in their employment agreements, misappropriating trade secrets, and unlawfully accessing Dresser-Rand's computers. Instead, they depend upon isolated definitions and terms taken out of context of the statute to support their motion to dismiss pursuant to the TCPA. Their TCPA motion is contrary both to the purpose of the TCPA and to the rules of statutory construction and can be justified only by discarding both.
The construction of the TCPA must be brought back into compliance with the rules of statutory construction, and it should be made clear that TCPA motions can be denied on the pleadings for failure of the movants to show by a preponderance of the evidence that the underlying lawsuit against them was brought in retaliation for their lawful exercise of constitutionally protected rights to speak, petition, assemble or otherwise participate in government.
B. The Rules of Statutory Construction
A court's "objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." Coleman , 512 S.W.3d at 899 (quoting Lippincott v. Whisenhunt , 462 S.W.3d 507, 509 (Tex. 2015) ). "Legislative intent derives from an act as a whole rather than from isolated portions of it." Youngkin v. Hines , 546 S.W.3d 675, 680 (Tex. 2018) (emphasis added). Courts must "presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." Lippincott , 462 S.W.3d at 509 ; Coleman , 512 S.W.3d at 899 ; Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind.").
The rules of statutory construction require that "we look to the plain meaning of the words in a statute as an expression of legislative intent," and, thus, "we initially limit our statutory review to the plain meaning of the text as the sole expression of legislative intent ... unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results." Abutahoun v. Dow Chem. Co. , 463 S.W.3d 42, 46 (Tex. 2015) ; see TEX. GOV'T CODE ANN. § 311.011 (West 2013). The rules of construction also require that we read all parts of a statute in harmony, finding no part superfluous. See Sommers for Ala. & Dunlavy Ltd. v. Sandcastle Homes, Inc. , 521 S.W.3d 749, 754 (Tex. 2017) ("We analyze *366 a statute as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded.").
Courts must interpret a statute according to its plain meaning if its language is unambiguous, unless that interpretation would lead to absurd results. City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) ; Coleman , 512 S.W.3d at 899 ; see also Tex. Lottery Comm'n , 325 S.W.3d at 635 ("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results."). Finally, courts must "presume the Legislature intended a just and reasonable result by enacting the statute." City of Rockwall , 246 S.W.3d at 626 (citing TEX. GOV'T CODE ANN. § 311.021(3) (West 2013) ).
C. Application of the Rules of Statutory Construction to the TCPA
Despite the clear statutory directive-which has been recognized by Texas courts as the stated intent of the TCPA-and despite the rules of construction, some appellate courts, as referenced below, have read the Texas Supreme Court's case law as broadening the statutory definitions of "right to free speech" and "right of association" vastly beyond the bounds recognized by the Constitution or traditional First Amendment protections by construing the definitions of sections of the TCPA-specifically TCPA sections 27.002(1), (2), (3), and (7) -in isolation, in violation of that stated statutory purpose and the rules of construction. These sections of the TCPA define:
(1) "exercise of the right of free speech" as a "communication made in connection with a matter of public concern ," TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (West 2015) (emphasis added);
(2) "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests," id. § 27.001(2) ;
(3) "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic," id. § 27.001(1) ; and
(4) "matter of public concern" as "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figures; or (E) a good, product, or service in the marketplace." Id. § 27.001(7).
The TCPA movants' right to dismissal of the underlying suit against them is then predicated on their showing by a preponderance of the evidence that the suit is in retaliation for their lawful exercise of constitutionally protected rights, not on acts that can only be construed as unlawful, such as breach of a confidentiality agreement, tortious interference with contract, or theft of trade secrets, as here.
In Lippincott , the Texas Supreme Court, was called upon to construe the TCPA and held that "the plain language of the Act merely limits its scope to communications involving a public subject-not communications in public form." 462 S.W.3d at 508. Notably, the court's construction of the definition of "communication" did not entail that any and all private communications constitute "communications involving a public subject" within the scope of the protections provided by the TCPA against retaliatory lawsuits. But by failing to expressly limit the applicability of the TCPA to suits brought against the movants in retaliation for arguably lawful *367 activities, the Lippincott opinion has lent itself to over-expansive construction and overuse of the TCPA.
Subsequently, in a per curiam opinion in Coleman , the supreme court reversed the trial court's denial of ExxonMobil's TCPA motion to dismiss a defamation suit filed against it by a former employee. Coleman had pled that ExxonMobil employees defamed him by accusing him internally of failing to properly gauge a petroleum product storage tank and falsely reporting that he had gauged it. Coleman , 512 S.W.3d at 897-98. The supreme court held that, under the plain language of the TCPA, the private statements made among the employee, his supervisors, and an investigator at ExxonMobil about Coleman's alleged failure to gauge the tank were statements "in connection with" issues related to "potential environmental, health, safety, and economic risk" as identified by the legislature, and, therefore, the TCPA applied to Coleman's lawsuit under the TCPA's free-speech prong. Id. at 900-01 (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(1), (3), (7), 27.003(a) ). Like Lippincott , this opinion too has lent itself to overbroad interpretation and overuse by failing to expressly state its limitations.
Similarly, in Adams v. Starside Custom Builders, LLC , the supreme court stated that the TCPA's definition of "exercise of the right of free speech" is "not fully coextensive with the constitutional free-speech right" protected by the United States and Texas Constitutions but is broader. 547 S.W.3d 890, 892 (Tex. 2018).
I note that these opinions construing the plain language of the TCPA do not in any way entail that the plain-language reading of TCPA sections 27.001(1) - (3) and (7) need not comport with the plain language reading of sections 27.002 and 27.005(b)(1) and (b)(3), which plainly state that the purpose of the TCPA is "to encourage and safeguard" the First Amendment constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government by authorizing a party to move to dismiss a claim that is "based on, relates to, or is in response to the party's exercise of" these constitutional rights. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.002, 27.005(b)(1), (b)(3). Indeed, it would be blatantly contradictory to the rules of statutory construction for the court to have made such a holding. See TEX. GOV'T CODE ANN. § 311.011 ; Sommers , 521 S.W.3d at 754. But, like its predecessors, Adams too fails to clarify the scope of applicability of the TCPA and to set out the showing required of TCPA movants avoid dismissal of the motion on the pleadings, namely that the underlying suit against them was brought in retaliation for their exercise of lawful rights.
Accordingly, intermediate courts of appeals have construed the TCPA as according protection to any act of speech, petition, or association in connection with any good or service in the marketplace, whether that act can be construed lawfully or not. In Elite Auto Body LLC v. Autocraft Bodywerks, Inc. , for example, the Austin Court of Appeals determined that, under Coleman , the TCPA's definition of "communication" was not limited either to public communications or "to those the First Amendment protects." 520 S.W.3d 191, 204 (Tex. App.-Austin 2017, pet. dism'd). The Austin court opined, "The Act defines communication with no such limitation," and "with no reference to constitutional right or concepts." Id. Consequently, it opined that "in urging a First-Amendment limitation or overlay, [the non-movant plaintiff resisting the TCPA motion to dismiss], in Coleman's terms, is considered to be 'reading language into the statute that is not there.' " Id.
*368 The result of Elite Auto Body is a reading of the TCPA in which any communication (even an illegally shared password) counts as a constitutionally protected "communication," and the exercise of free speech in "a matter of public concern" includes any communication that "relates"-no matter how freely-with any "good, product, or service in the marketplace." Such a reading here would protect TCPA movants who associated to breach their employment agreements with a company whose goods are sold in the marketplace, to steal that employer's proprietary information, and to "communicate" to each other and their new company, a competitor of Dresser-Rand's, trade secrets stolen from the former company-all illegal acts that not only are not protected by law but, if proved, establish liability for wrongful acts under the law.
Such broad self-contradictory construction of the terms of the TCPA is contrary to the traditional rules of a plain-language statutory construction the supreme court has expressly recognized both in TCPA litigation and elsewhere. As that court stated in both Lippincott and Coleman , a court's "objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." Coleman , 512 S.W.3d at 899 (quoting Lippincott , 462 S.W.3d at 509 ). Had the supreme court connected that statement up with its necessary implications for application of the TCPA only to retaliation for arguably lawful activities, the Elite Auto Body opinion would not have been able to rely on Lippincott and Coleman.
Construing the TCPA as broadly as the court did in Elite Auto Body , namely to the point of the absurd-and as Universal and the Former Employees ask us to do here-requires ignoring the rules of construction and the plain language of the TCPA-which expressly states that the legislature intended to protect "constitutional" rights to "participate in government"-and reading statutory definitions in isolation from the Act as a whole and in an internally contradictory fashion. This type of statutory construction violates the legislatively-stated dual purpose of the TCPA: "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" and also to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ; Coleman , 512 S.W.3d at 898.
The Elite Auto Body court, however, reading definitions from the TCPA as broadly as possible and out of their statutory context, determined that the TCPA applied to misappropriation of trade secrets claims similar to those here. 520 S.W.3d at 204. The Austin court claimed to rely on precedent established by the supreme court in Coleman in opining that the TCPA does not limit protected communications to those that fall under constitutional protections. Id. But a fair reading of Coleman consistent with established Texas law does not support the interpretation given it by the Austin Court of Appeals. Rather, by the plain language of the statute, the communications protected by the TCPA are limited to constitutionally-protected communications made in connection with a matter of public concern. The Austin court, however, conflated the separate issues of the definition of a word in the TCPA and the protection afforded by the TCPA. Critically, it failed to apply the statute as a whole to effectuate its purpose, despite the clear lead of the Texas Supreme Court. See, e.g. , Lippincott , 462 S.W.3d at 509 (presuming that "the Legislature included each word in the statue for a purpose" and construing sections 27.011, *369 27.005(b), and 27.001(3) together, concluding that Legislature directed courts to construe TCPA "liberally to effectuate its purpose and intent fully" and that it requires that defendant moving for dismissal under the TCPA "show 'by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of ... the rights of free speech,' " where "the exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern").
The Elite Autobody court acknowledged that "[t]he Texas Supreme Court has summarized [the] goal [of the TCPA] as [being to] 'identify and summarily dispose of lawsuits designed only to chill First Amendment rights, [but] not ... dismiss meritorious lawsuits.' " 520 S.W.3d at 198-99 (quoting In re Lipsky , 460 S.W.3d at 589 ). Yet it then explicitly contradicted its acknowledgement of this statutory purpose, stated by the supreme court, of protecting against suits brought only to chill First Amendment rights by reasoning that the "communication" the TCPA protects need not be a constitutionally protected interest. It reasoned, "[I]n Coleman , the supreme court never suggested that the constitutional concepts of 'freedom of speech' or 'public concern' had any bearing on its 'plain-meaning' construction of the TCPA's definitions of these terms." Id. at 204. But this is a non sequitur.
Coleman , by contrast to the Elite Autobody court, quoted the exact same language from In re Lipsky that the Austin court quoted (set out above). And, quoting the TCPA, it opined that the courts are constrained to construe the TCPA so as "to effectuate its purpose and intent fully," which is "to 'encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law' " while protecting "the rights of a person to file meritorious lawsuits for demonstrable injury." Coleman , 512 S.W.3d at 898 (quoting TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.011(b), 27.002 ) (emphasis added). And it stated, "Our objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." Id. at 899. But it did not expressly state that only arguably lawful activities are protected by the TCPA; and it did not clarify that TCPA motions can be dismissed for failure of the movants to show the activities alleged against them in the underlying suit can be construed as lawful activities in the exercise of protected acts of speech, association, or petition.
D. Application of the TCPA to Dresser-Rand's Claims Against Universal and the Former Employees
Here, Universal and the Former Employees moved for dismissal pursuant to the TCPA, asserting that Dresser-Rand's legal action against them was based on, related to, or was in response to their exercise of their rights of free speech and free association. The trial court here found that Dresser-Rand's suit did not implicate Universal's or the Former Employees' statutorily-defined First Amendment right of free speech in connection with a matter of public concern or the right to free association. I agree.
TCPA movants seeking dismissal of a suit against them bear the initial burden to "show by a preponderance of the evidence that the [non-movant's] claim 'is based on, relates to, or is in response to [their] exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association' " under the First Amendment as defined in the TCPA statute. Coleman , 512 S.W.3d at 898 (quoting *370 TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) ). The plain language of the TCPA thus requires that there must be a connection between the claims made by the plaintiff in the underlying legal proceeding and protected conduct on the part of the defendants. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) ; Dolcefino v. Cypress Creek EMS , 540 S.W.3d 194, 201 (Tex. App.-Houston [1st Dist.] 2017, no pet.).
Yet, in their TCPA motion, neither Universal nor the Former Employees identified any pleadings by Dresser-Rand designed to stifle any communications among themselves for speech or actions that could reasonably be construed as non-tortious. Rather, to the extent that communications among the Former Employees, Universal, and prospective clients occurred and were related to any matters of public concern, those matters are unidentified, except as they constitute wrongful acts under the elements of Dresser-Rand's claims that, at best, are only tangential to any matter of public concern, i.e., their breaching the Employment Agreement by making copies of confidential information, misappropriating trade secrets by misusing Dresser-Rand's computers and failing to return confidential information upon resigning from Dresser-Rand, and using confidential information to compete with Dresser-Rand in the market place.
The lack of any specific, identifiable protected type of communication or association by the TCPA movants, Universal and the Former Employees, in their underlying case stands in stark contrast to those cases in which Texas courts have legitimately held that the TCPA applies, all of which involve speech on matters of public concern. See, e.g. , Hersh , 526 S.W.3d at 463-64, 67-68 (discussing TCPA in context of defamation suit brought by parents of son who committed suicide against author and mental health advocate based on author's allegedly providing false information regarding death of parents' son to news outlet, in which parents alleged that author "fed" details to reporter during conversation about son's death, and identifying as "matter of public concern" "suicide prevention and awareness" which "relates to health and safety, and community well-being, all included in the statutory definition of 'matters of public concern' "); Coleman , 512 S.W.3d at 897-98 (applying TCPA to defamation suit filed by former employee against ExxonMobil Pipeline, in which former employee alleged that communications made among ExxonMobil employees that he failed to properly "gauge" petroleum storage tank and then reported otherwise, and in which former employee identified specific internal reports, emails, and other communications containing allegedly defamatory statements, involved matters of public concern because reports at issue involved environmental and safety issues); Lippincott , 462 S.W.3d at 508-10 (applying TCPA to claims filed by former contract employee against medical administrators for allegedly defamatory statements made by administrators, via email, regarding whether contract employee had properly provided medical services, had falsified records, and violated numerous protocols and identifying as matters of public concern "the provision of medical services by a health care professional" on grounds that public has right to know about issues "related to health or safety, community well-being, and the provision of services in the market place"); In re Lipsky , 460 S.W.3d at 585, 591 (applying TCPA to defamation, business disparagement, and civil conspiracy claims brought by oil and gas operator against citizens who publicly blamed company for water quality problems and who eventually sued operator for negligence and nuisance related to fracking operations, identifying as matter of public concern publication of *371 false information about oil and gas operator's business interests).
I would hold that the types of claims alleged by Dresser-Rand against Universal and the Former Employees do not fall within the type of conduct or communication covered by the TCPA as identified in these cases. Nor can any "right of association"-defined as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests"-protect the alleged conduct here, which involves conspiring or colluding to misappropriate or convert trade secrets and other protected information without any identified act of speech or association on the part of Universal or the Former Employees that can be given a non-tortious interpretation. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(2), 27.002 ; Coleman , 512 S.W.3d at 898 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ).
Accordingly, I would hold that Universal and the Former Employees have failed to carry their burden under the TCPA of showing that Dresser-Rand's legal action against them was "based on, relate[d] to, or ... in response to" their exercise of a legitimate right of free speech or right of association. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) ; Coleman , 512 S.W.3d at 898. And I would dismiss the TCPA motion for failure of the TCPA movants to show the applicability of the TCPA to Dresser-Rand's suit. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ; Coleman , 512 S.W.3d at 898.
Thus, although I agree that Dresser-Rand also properly showed by clear and specific evidence a prima facie case for each essential element of each of its claims, I would not have required Dresser-Rand to make such a showing in order to avoid dismissal of its suit. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) - (c) ; see Coleman , 512 S.W.3d at 898-99 ; Dolcefino , 540 S.W.3d at 199.
Conclusion
I would hold that Dresser-Rand's claims for breach of a confidentiality agreement, misappropriation of trade secrets, computer fraud, conversion, and civil theft are not the sorts of claims to which the TCPA was intended to apply. Universal and the Former Employees have failed to show by a preponderance of the evidence that the TCPA applies. Accordingly, I would hold that the Former Employees failed to carry their burden of going forward as a matter of law and that, therefore, the panel did not need to reach the second prong of the dismissal process.
To read out of the TCPA the requirement that movants must prove that the activities in which they are engaged and for which they were sued are at least arguably lawful constitutionally protected activities contradicts the statute's purpose and its plain language. It also undermines the second stated purpose of the Act, namely, to protect the rights of parties like Dresser-Rand to bring claims meritorious on their face without having to suffer vexatious delays based on the TCPA and the burden of proving a prima facie case regardless of a showing by the TCPA movants that the respondent's suit against them was in retaliation for their exercise of lawful protected rights of speech, petition, or assembly.
For these reasons, I ask that the Texas Supreme Court make it clear that a TCPA motion may be denied for failure of the TCPA movant to show by a preponderance of the evidence that the claims against them are based on, relate to, or are in response to the movant's lawful exercise of a protected right, without requiring the non-movant to make a prima facie evidentiary showing of the merits of its case as a *372 necessary pre-condition to denial of the TCPA motion.