# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00721-CV

---

**Kevin Rose, Appellant**

**v.**

**Scientific Machine & Welding, Inc., Appellee**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-005034, THE HONORABLE JAMES LEE CARROLL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Scientific Machine & Welding, Inc. (Scientific) sued its former employee, Kevin Rose, for breach of contract and trade-secret misappropriation after he left its employ and began working for one of its customers. Rose moved to dismiss the action under the Texas Citizens Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. The trial court denied the motion. On appeal, Rose argues that the trial court erred in denying his motion because Scientific's lawsuit relates to his exercise of the rights of free speech and association, and Scientific has proved neither exemption of its lawsuit from the TCPA under the Act's "commercial speech" exemption nor a prima facie case for its claims. *See id.* §§ 27.005(b), (c), .010(b). For the following reasons, we affirm the trial court's denial of Rose's TCPA motion.

**BACKGROUND[1]**

Scientific is a manufacturing company that specializes in producing specialty parts and equipment. It regularly creates customized orders based on specialized drawings and blueprints that it prepares for its customers. Scientific formerly employed Rose as its Operations Manager, and Rose worked with its customers to develop manufacturing drawings and blueprints for it to create the necessary final products. Upon ceasing his employment with Scientific, Rose began working for Scientific's customer, FlashParking. Rose allegedly "improperly removed and divulged trade secrets and proprietary assets of Scientific" to FlashParking either while still working for Scientific or after starting to work for FlashParking. Scientific alleges that it "has information and belief that Rose has in his possession a number of the original manufacturer drawings from Scientific and continues to profit from the sale and design of such drawings with many of the former customers of Scientific." Additionally, before termination of his employment with Scientific, Rose "made copies of manufacturing drawings" and "used [Scientific]'s *trade secrets* for the purpose of manufacturing and selling, in competition with Scientific."

Scientific supported its response to Rose's TCPA motion with the affidavit of its president, Alan Basta. Basta averred that Scientific "considers the manufacturing diagrams and accompanying instructions and documentation to be a trade secret of [Scientific]" and that Rose's responsibility at Scientific "was to manage relationships and commercial sales with the different commercial customers, the creation of manufacturing drawings, the coordination of

---

[1] The facts in this section are taken from Scientific's pleadings, which courts must consider in determining the applicability of the TCPA and whether a plaintiff has met its burden to overcome a party's motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) ("In determining whether a legal action should be dismissed . . . , the court shall consider the pleadings."); *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (noting, in context of deciding what legal action at issue was "based on," that plaintiff's petition alone can be sufficient to show TCPA's applicability).

purchase material and components, the overseeing of the manufacturing and assembly process, and to ensure quality control and product delivery." Basta averred that Rose "spent the vast amount of his time at [Scientific] servicing FlashParking, a major client of [Scientific]."

Basta's affidavit stated that Scientific began its work for FlashParking by designing and manufacturing a parking-ticket kiosk (the SmartStation) and then later designing various other items. Basta further averred:

- For each of these manufactured items, [Scientific] created a drawing package that details the assembled product and technical specifications for [its] manufacture;

- The drawings were considered [Scientific's] proprietary information and trade secrets;

- No drawings [of the SmartStation] other than those created by Scientific existed outside of Scientific prior to Rose's termination;

- During the time that [] Rose was an employee of [Scientific], I instructed [him] not to remove any schematics/blue prints and instructions for any components related to FlashParking or any other Client;

- Rose agreed that he would neither remove any of the schematics/blue prints and instructions nor disclose any such documents to FlashParking or those belonging to any other client. I further explained to [] Rose that all such documents were confidential;

- [Scientific] has evidence of the improper removal and disclosure of the drawings by Rose based in part in how quickly vendors of [Scientific] began directly working with FlashParking;

- [M]ere days after the resignation of Rose, 3P Industries, Inc. (the powder coater for a product [Scientific] sold to FlashParking) sent an email to [] Rose's email address at [Scientific] to arrange pickup of parts in Elgin, Texas, Rose's town of residence. A copy of this email is referred to as Exhibit C and incorporated by reference in this document. This email makes it obvious that [] Rose was already working for FlashParking prior to his termination with [Scientific];

3

- Prior to the resignation of Rose, [Scientific] was the sole manufacturer and supplier to FlashParking for the parts supplied by [Scientific]. [] Rose was the primary and almost exclusive contact between [Scientific] and FlashParking and suppliers to [Scientific]. It appears that FlashParking hired [] Rose in order to obtain trade secrets and intellectual property owned by [Scientific].

The trial court denied Rose's motion to dismiss after a non-evidentiary hearing.

## DISCUSSION

The TCPA's stated overarching purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government" against infringement by meritless lawsuits. *See* Tex. Civ. Prac. & Rem. Code § 27.002. The TCPA directs that it be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("The TCPA casts a wide net."). To achieve its professed purposes, the Act defines "a suspect class of legal proceedings that are deemed to implicate free expression, making those proceedings subject to a threshold testing of potential merit, and compelling rapid dismissal—with mandatory cost-shifting and sanctions—for any found wanting." *Cavin v. Abbott*, 545 S.W.3d 47, 55 (Tex. App.—Austin 2017, pet. denied). "[T]he unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings." *Adams*, 547 S.W.3d at 897. Section 27.010, however, exempts certain types of "legal actions" from the Act's purview and, therefore, from the "suspect class" of legal actions subject to dismissal. *See* Tex. Civ. Prac. & Rem. Code § 27.010.

Rose contends on appeal that the trial court erred in denying his motion to dismiss because (1) the TCPA applies to claims, such as those here, concerning wrongful disclosure of trade-secret or proprietary information, (2) Scientific did not meet its burden to show that the

4

TCPA's commercial-speech exemption applies, (3) Scientific did not meet its burden to present clear and specific evidence of the essential elements of its claims, and (4) he showed that the statute of frauds barred Scientific's contract claim. We will address each contention in turn, to the extent necessary.

**Does the TCPA apply to this lawsuit?**

Under the TCPA, a party may file a motion to dismiss a "legal action" that "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a); *see id.* § 27.001(6) (defining "legal action" to include "a lawsuit" or single "cause of action"). Rose contends that the TCPA applies to Scientific's lawsuit because it "relates to" his exercise of the rights of association and of free speech.

The TCPA defines both the exercise of the right of association and the exercise of the right of free speech with reference to the making of a "communication," *see id.* § 27.001(2), (3), which term "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic," *id.* § 27.001(1). The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests" and the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(2), (3). A "'matter of public concern' includes an issue related to . . . a good, product, or service in the marketplace." *Id.* § 27.001(7).

This Court has recently held that alleged trade-secret disclosures may fit within the TCPA-defined right of association. *See Elite Auto Body LLC v. Autocraft Bodywerks, Inc.,*

5

520 S.W.3d 191, 204–06 (Tex. App.—Austin 2017, pet. dism'd). In *Elite Auto Body*, we considered the plaintiff's allegations that its former employees had founded or joined a competing company and furnished the new company with its confidential trade secrets. *See id.* at 194. We held that these allegations met the TCPA's definition of a communication between individuals who join together to pursue common interests and that the lawsuit, therefore, related to the defendants' exercise of the right of association. *See id.* at 205–06.

Similarly here, Scientific's petition alleges that Rose "disclosed" its trade secrets by providing the misappropriated blueprints and drawings or copies thereof to FlashParking and others, which fits within the broad definition of a TCPA "communication." *See* Tex. Civ. Prac. & Rem. Code § 27.001(1). Furthermore, Scientific's allegation that Rose communicated its trade secrets to FlashParking and others for the benefit of himself and the parties to whom he communicated them fits within the TCPA's definition of the exercise of the right of association because the alleged communication allowed for Rose and those parties to pursue common business interests. *See Elite Auto Body*, 520 S.W.3d at 205–06. The alleged wrongful disclosure (the TCPA "communication") of Scientific's trade secrets underlies both of Scientific's causes of action (breach of contract and trade-secret misappropriation). Accordingly, we hold that the TCPA applies to Scientific's lawsuit absent the application of an exemption, which issue we discuss below. Because of our determination that the TCPA applies to this lawsuit due to its relating to Rose's exercise of the right of association, we need not consider whether the lawsuit alternatively relates to Rose's exercise of the right of free speech. *Id.* at 205; *see* Tex. R. App. P. 47.1.

*Does the commercial-speech exemption apply?*

Having determined that the TCPA applies to this lawsuit, we consider whether Scientific's claims are exempt from the Act under its commercial-speech exemption:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code § 27.010(b). The burden to establish the exemption is on the party relying on it. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. filed). The Texas Supreme Court has recently construed the commercial-speech exemption as applying when:

> (1)     the defendant was primarily engaged in the business of selling or leasing goods [or services],
>
> (2)     the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,
>
> (3)     the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and
>
> (4)     the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam). To determine whether a party has met its burden on the exemption's elements, we consider the pleadings and record evidence. *See Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652, at *4 (Tex.

7

App.—Austin May 4, 2018, pet. denied) (mem. op.). Factual allegations in a plaintiff's petition alone may be sufficient to meet the exemption's elements. *See id.*

We conclude that the pleadings and evidence establish the first element—that Rose was, at the relevant time, "primarily engaged in the business of selling goods or services." Scientific's petition and Basta's affidavit state that Rose was Scientific's operations manager immediately before or when he allegedly disclosed or sold its trade secrets to FlashParking and other parties. Scientific designs, manufactures, and sells custom metal parts and equipment to clients such as FlashParking. The goods and services it sells include the design of products, the creation of drawings and blueprints, and the manufacture of products as well as, on occasion, the sale of drawings and blueprints themselves.[2] Basta's affidavit outlined Rose's responsibility in his role as Operations Manager to include "the manage[ment of] relationships and commercial sales with the different commercial customers," "the creation of manufacturing drawings," and "the overseeing of the manufacturing and assembly process." The "vast amount" of Rose's time at Scientific was spent "servicing" the FlashParking account. Based on these allegations, it is indisputable that Scientific itself is "primarily engaged in the business of selling the goods and services" outlined above.

Furthermore, while we have found no authority regarding whether an employee of a company primarily engaged in the business of selling goods and services should also be considered to be primarily engaged in that business, the only logical conclusion from the circumstances here is that Rose, as Scientific's operations manager tasked with managing

---

[2] Basta attached to his affidavit Scientific's contract with FlashParking, signed by Rose on behalf of Scientific. The contract provided that FlashParking would be entitled to the blueprints for the SmartStations designed by Scientific upon payment of the required funds under the contract and the delivery of the 500th SmartStation as detailed in the contract. Basta averred that FlashParking had not complied with the requirement when Rose left its employ.

commercial sales, servicing accounts (including FlashParking's), and creating manufacturing drawings, was similarly and necessarily "primarily engaged" in the same "business" as Scientific. *Cf. Backes v. Misko*, 486 S.W.3d 7, 22 (Tex. App.—Dallas 2015, pet. denied) (concluding that evidence did not show that defendant was primarily engaged in business of selling quarter-horse-breeding services where evidence showed that she had full-time job raising money for charity and that breeding came "second" for her). Notably, the exemption's plain text requires the defendant to be primarily engaged in *the business* of selling goods or services, not primarily engaged in the act of *selling*. *See* Tex. Civ. Prac. & Rem. Code § 27.010(b).

It is reasonable to conclude that a high-level executive of a company that primarily designs and sells manufactured items to customers is also "primarily engaged" in that type of business. Furthermore, we conclude that under the facts alleged here—that when he resigned, Rose allegedly performed or sought to perform similar services for his former employer's customers—he continued to be primarily engaged in that type of business for the purposes of the TCPA's commercial-speech exemption. We find particularly relevant to this conclusion the context of the allegedly actionable statements and the capacity in which Rose made them—which we discuss in more detail below with respect to the second and third elements—and is consistent with the policy behind the commercial-speech exemption. *See Castleman*, 546 S.W.3d at 688–91 (analyzing applicability of commercial-speech exemption largely by considering capacity in which defendant makes challenged statement and whether defendant or its business "stood to profit" from statements at issue); *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas May 15, 2019, no pet. h.) (mem. op.) (noting that in *Castleman*, supreme court "implied the exemption applies

9

when communications involve business pursuits for oneself or a business stands to profit from the statements at issue").

In considering the second element—whether Rose made the statements at issue (i.e., disclosed the blueprints and drawings) "in his capacity as a seller of the goods and services" previously described—we look to the context in which the statement was allegedly made. *See Castleman*, 546 S.W.3d at 690–91 ("[T]he commercial-speech exemption applies only to *certain* communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as "commercial speech which does 'no more than propose a commercial transaction.'" (citations omitted)); *Giri*, 2018 WL 2074652, at *4 (concluding that second element was met where evidence showed defendant veterinarian sent email to his past customers acknowledging their prior use of his pathology services); *Abatecola v. 2 Savages Concrete Pumping LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *9–10 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (determining that exemption applied to defendant competitor's allegedly tortiously interfering statements it made to plaintiff's customers but not to its statements made in context of hiring away plaintiff's employee because those statements did not arise out of commercial transaction involving goods and services that competitor sold); *Epperson v. Mueller*, No. 01-15-00231-CV, 2016 WL 4253978, at *10–11 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.) (determining that online comments made by defendant-seller of collectible memorabilia about authenticity of competitor's goods were made in course of promoting defendant's authenticity services even though he did not overtly solicit sales of goods or services).

10

The gravamen of Scientific's allegations is that Rose disclosed and sold, or attempted to sell, its trade secrets (the blueprints and drawings) to FlashParking and others to profit personally. In other words, Scientific contends that Rose unlawfully disclosed the trade secrets in his personal capacity as a designer and creator of blueprints and drawings for the manufacture of specialty machines; he did not lawfully disclose that information as a representative of Scientific. According to Scientific's petition, Rose "continues to [personally] profit from the sale and design of such drawings with many of the former customers of Scientific." Essentially, Scientific alleged that Rose acted independently in promoting himself and his services and the misappropriated goods and that Rose, *through the very act of selling or proposing to sell Scientific's trade secrets for his own personal gain*, functioned as the "seller" (or would-be seller) of those goods and services. Because Scientific's allegations complain about Rose's sale or attempted sale of the blueprints and drawings for his personal gain as the actionable conduct, we conclude that the allegations meet the second *Castleman* requirement. *See Staff Care*, 2019 WL 2121116, at *8 (concluding that exemption requirements were met where pleadings showed that physician staffing agency stood to profit from statements at issue made to physicians informing them that they could not work for competing company); *cf. Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 155 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (determining that where evidence did not show that independent contractor of home improvement company made statements at issue in attempt to promote his own business rather than that of his principal, second element was not met).

We similarly conclude that Scientific's pleadings and evidence establish the closely related third element. Applied here, the third element requires that Rose's alleged disclosure and sale or attempted sale of the blueprints and drawings "arose out of a commercial

11

transaction involving the goods or services that he provides" (i.e., the design and manufacture of products and the creation of drawings and blueprints). A "commercial transaction" need not be consummated and can include conduct or statements that merely "propose[] a commercial transaction." *See Castleman*, 546 S.W.3d at 690; *Toth*, 557 S.W.3d at 154 ("*Castleman* aligns with the approach taken by other Texas courts that have held the challenged statement or conduct must be made 'for the purpose of securing sales in the goods or services of the person making the statement.'" (quoting *Backes v. Misko*, 486 S.W.3d 7, 21 (Tex. App.—Dallas 2015, pet. denied)); *see also Morrison v. Profanchik*, __ S.W.3d __, No. 03-17-00593-CV, 2019 WL 2202210, at *5 (Tex. App.—Austin May 22, 2019, no pet. h.) (noting that "nothing in the text of the 'commercial speech' exemption, or in the supreme court's analysis of this exemption in *Castleman*, dictates the content of the speech at issue" and that defendant's online review of competitor's sale and installation of same product sold and installed by defendant met third and fourth requirements); *Giri*, 2018 WL 2074652, at *4 (noting that requirement that statement or conduct at issue "arose out of" commercial transaction means merely that it "results, issues, or proceeds" from sale or commercial transaction). Scientific's pleadings allege that Rose "continues to profit from the sale and design of [the] drawings" that he misappropriated and has used them "for the purpose of manufacturing and selling, in competition with Scientific." Basta avers that "[i]t appears that FlashParking hired Kevin Rose in order to obtain the trade secrets and intellectual property owned by [Scientific]." These allegations are sufficient to meet the requirement that Rose's challenged statements and conduct "arose out of" a commercial transaction involving the kinds of goods and services that he provides.

Similarly, the intended audience of the alleged disclosure and attempted sale— FlashParking and other customers of Scientific—were actual or potential customers of Rose for

the products and services that he allegedly was attempting to or did provide through his misappropriation of Scientific's trade secrets. In other words, as Scientific alleges, Rose sought to profit personally through his provision of the trade secrets to FlashParking and other of its customers and in fact profited by being hired by FlashParking or receiving other remuneration. In sum, Rose's alleged disclosures of Scientific's trade secrets constitute communications "related to a good, product, or service in the marketplace" that proposed a commercial transaction involving those very goods and services in pursuit of profit for himself. *See Castleman*, 546 S.W.3d at 690–91.

We conclude that the evidence and pleadings meet all four elements of the commercial-speech exemption and that, accordingly, the trial court properly denied Rose's motion to dismiss because Scientific's lawsuit is exempt from the TCPA's provisions. *See* Tex. Civ. Prac. & Rem. Code § 27.010(b). Because of this holding, we need not address Rose's third and fourth issues. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Because we have concluded that the TCPA's commercial-speech exemption applies to Scientific's lawsuit, the trial court properly denied Rose's motion to dismiss, and we affirm the trial court's order denying the motion.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: June 25, 2019

13