**Reversed and Remanded and Majority and Dissenting Opinions filed April 28, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00594-CV

---

**WILLIAM REEVES, Appellant**

**V.**

**HARBOR AMERICA CENTRAL, INC., Appellee**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-25574**

---

## M A J O R I T Y   O P I N I O N

In this second appeal of a trial court's denial of a motion to dismiss under the Texas Citizens Participation Act ("TCPA"), we consider whether the Act applies to claims for breach of an employment agreement containing non-compete, non-solicitation, and confidentiality provisions, misappropriation of trade secrets, conversion, and breach of fiduciary duty. Because we hold that the TCPA applies

to all of the non-movant's claims, we reverse the trial court's order and remand the cause for further proceedings.

## Background

Appellee Harbor America Central, Inc. is a professional employer organization that provides human resources functions and staff leasing services to companies. Appellant William Reeves began working for Harbor America in 2006 as an independent contractor. In 2007, Reeves became an employee of Harbor America.

At that time, the parties entered into an employment agreement, which contained non-compete, non-solicitation, and confidentiality provisions. In the Covenant Not to Solicit, Reeves agreed, in relevant part, that "while employed by [Harbor America] and . . . for a period of one (1) year following the termination of his employment"—defined as the "Non-Solicitation Period"—Reeves would not "solicit the business of, or perform services, in competition with or in a manner that could reasonably be expected to adversely affect [Harbor America] . . . or otherwise interfere with [Harbor America's] relationship with, any Client, or prospective Client" during the Non-Solicitation Period. Reeves also agreed during the Non-Solicitation Period and "thereafter for as long as [he remained] a consultant to [Harbor America]" not to "hire or solicit any employee, consultant or independent sales agent of [Harbor America] away from [Harbor America] or encourage any such [person] to leave such employment or relationship." The agreement's Confidential Information provision prohibited Reeves from disclosing to anyone or using for his own purposes or the benefit of any other person or corporation Harbor America's confidential information, defined as "trade secrets 'know-how' and other proprietary information," including client lists, during the Non-Solicitation Period.

2

The employment agreement also provided that, if mutually agreed upon, Reeves could convert from an employee to an independent contractor. If Reeves became an independent contractor, Harbor America agreed to pay Reeves certain residual commissions, which were to be calculated under a predetermined formula.

Reeves says that he became an independent contractor in 2014 and he was thereafter entitled to the commissions until the end of 2020.[1] Reeves alleges that Harbor America began paying reduced commissions around August 2016. Reeves resigned from Harbor America on August 25, 2016, and started a competing company, Harvest Works Consulting, LLC. According to Reeves, "Harbor America confirmed that he would continue to receive commissions for his book of business" but Reeves did not receive any commissions after he left Harbor America. Reeves sued Harbor America for breach of contract, alleging that Harbor America failed to pay Reeves over $1.6 million in commissions.

Harbor America asserted counterclaims for breach of contract, misappropriation of trade secrets, conversion, breach of fiduciary duty, and breach of the duty of loyalty. Harbor America's counterclaims were premised on allegations that Reeves misused confidential information to develop Harvest Works with David Fender, a former Harbor America employee, and to solicit Harbor America's customers, all in violation of Reeves's obligations under the employment agreement. As this court stated in a prior appeal of this case:

> Harbor America alleges that it reviewed Reeves's "emails and other communications" and discovered that "prior to his resignation," Reeves made plans with another Harbor America employee, David Fender, to develop a company akin to Harvest Works. According to Harbor America, "Reeves expressly discussed his partnership with Fender, Fender's involvement in establishing the [new company] and

---

[1] Harbor America disputes that Reeves became an independent contractor in 2014 and instead contends that Reeves remained an employee until he resigned in 2016.

3

in developing producers and customers." Harbor America further alleges that one of its largest customers left for Harvest Works and "Reeves has solicited Harbor America's business and/or competed against Harbor America in partnership with or indirectly through Fender and Harvest Works."

*Reeves v. Harbor Am. Cent., Inc.*, 552 S.W.3d 389, 392 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("*Reeves I*").[2] Harbor America sought monetary damages, as well as injunctive relief.

Reeves filed a motion to dismiss Harbor America's counterclaims under the TCPA, arguing that Harbor America's legal action was in response to Reeves's exercise of the right of association.[3] Before Harbor America filed a response, the trial court denied Reeves's motion. In a written order, the trial court stated that the motion was "being used as an excuse not to participate in discovery ordered by the Court and agreed to by the parties in a binding Rule 11 Agreement." Reeves appealed. This court reversed and rendered because the trial court did not analyze the motion on its merits under the framework required by the TCPA. *See Reeves I*, 552 S.W.3d at 395-96.

On remand, Harbor America filed a response, but only as to applicability of the TCPA to the counterclaims at issue, i.e., the "first step" of a TCPA analysis. Harbor America did not proceed to the second step of the analysis, which requires

---

[2] *Reeves I* relied on and quoted from Harbor America's original pleading. On remand, Harbor America amended its pleading to remove allegations that Reeves communicated with Fender. For instance, Harbor America asserts that it is relying solely on emails that Reeves sent to himself, which "provide a road map for anyone seeking to compete directly with Harbor America," and not any emails or other communications between Reeves and Fender. First, we note that a party "cannot circumvent the TCPA by artful pleading." *Callison v. C&C Personnel, LLC*, No. 09-19-00014-CV, 2019 WL 3022548, at *4 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.). Moreover, we look to the pleadings generally and to supporting and opposing affidavits and other evidence to determine whether a party's overall claims are predicated factually on conduct that falls within the protections of the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a).

[3] *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011.

4

clear and specific proof of a prima facie case for each challenged cause of action. As discussed more below, Harbor America contends that the trial judge requested briefing only as to the TCPA's applicability and not as to the merits of Harbor America's counterclaims, although there is no evidence of such an order in our record.

The trial court again denied Reeves's motion, "specifically find[ing] that Harbor America's counterclaim[s] [are] not based on, do[] not relate to, and [are] not in response to [Reeves's] exercise of the . . . right of association" and therefore concluding that the TCPA does not apply to claims that "merely attempt[] to enforce a non-compete agreement."

Reeves filed this second interlocutory appeal.[4]

**Analysis**

Reeves presents a single issue for this court's review: whether the trial court erred in denying his motion to dismiss under the TCPA. The central inquiry in this appeal is whether the TCPA applies to Harbor America's counterclaims. Because we conclude it does, however, we must address a second consideration, which is whether we are obligated under the Act to dismiss Harbor America's counterclaims or whether we should remand for a third consideration of Reeves's motion.

The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002; *see also Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). It "protects

---

[4] *See* Tex. Civ. Prac. & Rem. Code §§ 27.008, 51.014(a)(12) (authorizing interlocutory appeal of denial of chapter 27 motion to dismiss).

citizens from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). To further this end, the TCPA establishes a mechanism for prompt dismissal of lawsuits that threaten freedom of speech, of association, or to petition. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a) (West 2011) ("If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."); *see also Joselevitz*, 524 S.W.3d at 859. We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam); *Joselevitz*, 524 S.W.3d at 859; Tex. Civ. Prac. & Rem. Code § 27.011(b).

In the trial court, Reeves argued that each of Harbor America's counterclaims is "based on, relates to, or is in response to" Reeves's exercise of his right to associate freely. Tex. Civ. Prac. & Rem. Code § 27.003(a) (West 2011); *see also Lipsky*, 460 S.W.3d at 586. At the time Reeves filed his motion, the TCPA provided that a "communication between individuals who join together to collectively express, promote, pursue, or defend common interests" constitutes an exercise of the right of association. Tex. Civ. Prac. & Rem. Code § 27.001(2) (West 2011).[5] A communication includes "the making or submitting of a

---

[5] The legislature amended the definition of the "exercise of the right of association" in the last legislative session and narrowed the term's scope to common interests "relating to a governmental proceeding or a matter of public concern." *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1, 11-12 (amending Tex. Civ. Prac. & Rem. Code § 27.001(2), as applicable to cases filed on or after September 1, 2019, so that "exercise of the right of association" is now defined to mean "to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern").

statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

## I. Does the TCPA apply?

To answer the main inquiry of whether the TCPA applies to Harbor America's counterclaims, there are two sub-questions that the court must first answer: (A) was Reeves exercising his right of association; and (B) do Harbor America's counterclaims concern TCPA-protected communications? We review de novo whether claims are covered by the TCPA. *Deaver v. Desai*, 483 S.W.3d 668, 672 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### A. Was Reeves exercising his right of association?

The trial court rejected Reeves's argument that Harbor America's counterclaims implicated his right of association, stating in its order that the TCPA categorically does not apply to non-compete, non-solicitation, or trade-secret claims. But as this court has pointed out, "there is no exemption to the TCPA that entirely exempts such subject matter." *Abatecola v. 2 Savages Concrete Plumbing, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *6 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (rejecting trial court's findings that "allegations in Plaintiff's live pleadings are for contractual protection of proprietary information and trade secrets, and are therefore not subject to TCPA application" and that "the Non-Disclosure, Trade Secrets, and Non-Competition sued upon by Plaintiffs herein is not subject to TCPA application").

Courts consistently analyze such claims under the TCPA framework. One case, on which Reeves primarily relies to support his argument that Harbor America's counterclaims implicate his right of association, determined that communications made in furtherance of a party's "business enterprise relative to [a

7

competitor's] competitive position" constitute communications between individuals joined together to collectively promote, pursue, or defend common interests. *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 204-05 (Tex. App.—Austin 2017, pet. dism'd). Based on this determination, the court ultimately held that the appellants had proved by a preponderance of the evidence that the opposing party's legal action—asserting claims for trade secret misappropriation, violation of the Texas Uniform Trade Secret Act, unfair competition, breach of fiduciary duty, and civil conspiracy—was based on, related to, or was in response to the appellants' exercise of the right of association, and thus the TCPA applied. *Id.* at 205; *see also Rose v. Sci. Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *3 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.) (TCPA applied to plaintiff's claims of trade-secret misappropriation and breach of contract, which related to defendant's exercise of the right of association); *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 296 (Tex. App.—Austin 2018, pet. denied) (plaintiff's conspiracy claim, based on allegation of conspiracy to steal plaintiff's business by misuse of trade secrets and confidential information, implicated the right of free association and thus fell within TCPA's purview).

This court has reached the same holding in a similar case. In *Abatecola*, this court held that the plaintiff's tortious interference claims related to the exercise of the right of association, because the claims concerned communications made by individuals who joined together to collectively express, promote, pursue, or defend a common interest, "the common interests being the business of" a competing enterprise. *See Abatecola*, 2018 WL 3118601, at *7-8.

*Abatecola* controls. All of Harbor America's counterclaims allege conduct or communications implicating Reeves's exercise of his right of association.

8

Specifically, Harbor America alleges that Reeves breached his employment agreement by soliciting Harbor America's customers, misappropriated Harbor America's trade secrets in furtherance of Reeves's competing business, converted Harbor America's customer lists, and breached his duty of fiduciary duty by forming a competing business. These counterclaims are based on, relate to, or are in response to Reeves's endeavor with others (Fender and/or Harbor America's customers) to collectively express, promote, pursue, or defend a common interest, the common interest being the competing business of Harvest Works. *See id.*

Harbor America argues that *Abatecola* is distinguishable, because the case did not consider whether the TCPA abrogates other, controlling statutes. According to Harbor America, "[i]nterpreting the TCPA to apply whenever a party seeks to remedy or enjoin unlawful misappropriation of trade secrets or competition leads to an absurd result." Specifically, Harbor America contends that applying the TCPA in this circumstance undermines two other Texas statutes: the Texas Uniform Trade Secrets Act (chapter 134A of the Civil Practice and Remedies Code, referred to as the "TUTSA") and the Covenant Not to Compete Act (sections 15.50-.53 of the Business and Commerce Code, referred to as the "CNCA").

Harbor America contends that the TCPA conflicts with these two other statutory schemes in several respects. First, Harbor America argues that the mere filing of a TCPA motion in a TUTSA case deprives the claimant of "its statutorily prescribed right to a temporary injunction." *See* Tex. Civ. Prac. & Rem. Code § 134A.003(a) ("Actual or threatened misappropriation may be enjoined . . . ."). At least one court has rejected this argument in a mandamus proceeding. The Dallas Court of Appeals has held that the TCPA "does not prohibit a trial court from considering and granting a temporary restraining order or a temporary

9

injunction before deciding a motion to dismiss brought under the TCPA." *In re SPEX Grp. US LLC*, No. 05-18-00208-CV, 2018 WL 1312407, at *4 (Tex. App.—Dallas Mar. 14, 2018, orig. proceeding, mand. dism'd) (mem. op.). We agree with this reasoning. Harbor America has not directed this court to any language in the TCPA that categorically precludes its ability to seek and procure injunctive relief under a different statutory scheme. The only limitation is that, as the *SPEX Group* court noted, the party seeking injunctive relief must do so before a TCPA movant appeals the trial court's denial of its motion to dismiss.[6] *See id.*

Second, Harbor America argues that the TCPA conflicts with the "specific procedures, distinct evidentiary standards, and express remedies" provided under the TUTSA and the CNCA. *See* Tex. Civ. Prac. & Rem. Code § 134A.006(a) (procedures court may take to preserve the secrecy of an alleged trade secret); Tex. Bus. & Com. Code § 15.51 (procedures and remedies in actions to enforce certain covenants not to compete). Under the TUTSA, there is a presumption in favor of granting protective orders to preserve the secrecy of trade secrets during litigation, which "may include provisions limiting access to confidential information[,] . . . holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval." Tex. Civ. Prac. & Rem. Code § 134A.006(a). And the CNCA allocates the burden to establish that the covenant is enforceable to either the promisee or the promisor, depending on the nature of the agreement, *see* Tex. Bus. & Com. Code § 15.51(b), and permits the court to reform non-compliant covenants and grant a corresponding injunction, *see id.* § 15.51(c). The CNCA states that that act's procedures and remedies are exclusive and preempt any other

---

[6] *See* Tex. Civ. Prac. & Rem. Code § 51.014(b) (an interlocutory appeal of a denial of a motion to dismiss under section 27.003 stays all other proceedings in the trial court pending resolution of that appeal).

procedures or remedies in an action to enforce a covenant not to compete under common law or otherwise. *See id.* § 15.52.

We are not persuaded that the TCPA abrogates any of these procedures or remedies. As with seeking a temporary injunction, there is nothing in the TCPA that prohibits a court from granting a protective order under the TUTSA before deciding a TCPA motion to dismiss. *See In re SPEX Grp.*, 2018 WL 1312407, at *4. And while the CNCA provides procedures the trial court may take, and remedies the trial court may grant, when adjudicating whether a covenant not to compete has been breached, the TCPA provides procedures and remedies for summary dismissal of cases *before* a full adjudication of the merits takes place. *See, e.g.*, *Elite Auto Body*, 520 S.W.3d at 201 ("The primary means by which the TCPA advances its purpose is . . . an expedited dismissal mechanism tied to a burden-shifting analysis through which a litigant may require, by motion, *a threshold testing* of the merits of legal actions that are deemed to implicate the expressive interests protected by the statute.") (emphasis added, internal quotation omitted). In other words, the TCPA and the CNCA govern different stages of litigation, and as such, we discern no friction between the two statutory schemes.

Lastly, Harbor America argues that parties are subject to conflicting attorney's fees standards under all three acts. The TUTSA permits a prevailing party to recover attorney's fees if a claim of misappropriation is made in bad faith, *see* Tex. Civ. Prac. & Rem. Code § 134A.005(1); the CNCA allows a promisor to recover fees and costs if the promisee sought to enforce the covenant not to compete to a greater extent than necessary, *see* Tex. Bus. & Com. Code § 15.51(c); and the TCPA mandates that a movant recover its fees if the trial court dismisses the non-movant's legal action, *see* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). Again, these attorney's fees provisions govern different stages of litigation. If a

11

TCPA movant prevails, then the covered claims will be dismissed and there will be no adjudication on the merits of the non-movant's claims—i.e., whether a claim of misappropriation was made in bad faith or whether the defendant was forced to defend against an overly broad covenant. We see no conflict.

For these reasons, we reject Harbor America's argument that applying the TCPA to its counterclaims leads to an absurd result that would require us to deviate from our established precedent in *Abatecola*. Based on *Abatecola*, we hold that Harbor America's counterclaims implicate Reeves's exercise of the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b); *Abatecola*, 2018 WL 3118601, at *7-8.

### B. Do Harbor America's counterclaims concern "communications"?

The next question is whether Harbor America's counterclaims involve a "communication," as that term is defined by the Act. *See* Tex. Civ. Prac. & Rem. Code § 27.001(1) (a communication includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"). Harbor America argues that none of its counterclaims is premised on TCPA-protected communications.

Harbor America's argument lacks merit for all but potentially one of its counterclaims. With the possible exception of its conversion counterclaim, Harbor America's counterclaims are predicated on conduct that necessarily involves communication.[7] Harbor America's breach of contract, misappropriation, and breach of fiduciary duty claims are all premised on allegations that Reeves misused and misappropriated Harbor America's confidential trade secret information to

---

[7] After Reeves filed his motion to dismiss, Harbor America non-suited its conversion counterclaim, but we must consider the non-movant's claims as pleaded at the time of a TCPA movant's motion to dismiss. *See Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at *2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.).

12

develop a competing business with Fender and/or to solicit Harbor America's customers, which Reeves could not have done without communicating with Fender or customers in some way. *See Abatecola*, 2018 WL 3118601, at *7; *see also Callison*, 2019 WL 3022548, at *5 ("Utilization and disclosure of purported trade secret information [to unlawfully compete and convert business] necessarily required communicating that information to the customers.").

But what about Harbor America's conversion counterclaim? Conversion occurs when the plaintiff owned, possessed, or had the right to immediate possession of personal property and the defendant wrongfully exercised dominion or control over the property. *See Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386-87 (Tex. App.—Houston [14th Dist.] 2015, no pet.). According to Harbor America, nothing in its conversion counterclaim is premised on Reeves making or submitting any statement or document, and so the TCPA cannot apply to the conversion counterclaim.

The only specifically identified property that Harbor America alleged Reeves possessed after his resignation is "documents containing Harbor America's customer information." This claim—that Reeves unlawfully possessed Harbor America's property, specifically documents relating to customer information—is closely and necessarily intertwined with Harbor America's other allegations that Reeves solicited Harbor America's customers, which as discussed above constitutes an exercise of the right of association. Harbor America's conversion counterclaim, then, is at least "relate[d] to" Reeves's exercise of the right of association, which is all the statute required at the time of Reeves's motion. Tex. Civ. Prac. & Rem. Code § 27.003(a) (West 2011);[8] *see also Abatecola*, 2018 WL

---

[8] The legislature amended section 27.003 in the last legislative session. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 2. The legislature deleted the phrase "relates to" from the statute, which now permits a party to file a motion to dismiss a legal action only if it is "based on

3118601, at *8 ("Even assuming the claims of 2 Savages and Lowry are not based on or in response to communications, the claims are at least *related to* communications . . . . "); *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 85 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("The TCPA's 'is based on, relates to, or is in response to' language captures, at a minimum, a 'legal action' that is factually predicated upon *or* relates to alleged conduct that would fall within the TCPA's definition of exercise of [a protected right].") (emphasis added); *Cavin v. Abbott*, 545 S.W.3d 47, 69 (Tex. App.—Austin 2017, no pet.) (noting that under the plaintiffs' theory of the case, all of the defendants' complained-of acts, even those not factually predicated on communications, were portrayed as related components of other TCPA-protected communications).

For these reasons, we hold that the TCPA applies to all of Harbor America's counterclaims.

## II. What is the appropriate remedy?

We have concluded that Reeves met his burden to establish the TCPA's applicability. The last and final question then becomes what to do about the fact that Harbor America did not engage in the second step of a TCPA analysis, specifically whether it could produce clear and specific evidence of each of its claims. *See* Tex. Civ. Prac. & Rem. Code § 27.003(c) (to avoid dismissal of any claim covered by the TCPA, the non-movant must establish by clear and specific evidence a prima facie case for each essential element of the claim in question). Harbor America's response in the trial court concentrated only on the applicability of the TCPA, because, according to Harbor America, the trial court asked for briefing only on that issue. Harbor America asserted in a footnote in its response

---

or is in response to" the party's exercise of a TCPA-protected right. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a) (West 2019).

14

that, in the event that the court decided that any one of Harbor America's claims implicates a TCPA-protected communication, then the company "reserve[d] its right to establish a prima facie case for the claims found to be subject to the TCPA." There is no explicit indication in our record that the trial court narrowed the scope of the briefing, because the status conference at which the court purportedly issued its instruction was not transcribed. Harbor America asks this court to remand; Reeves asks that we render and dismiss all of Harbor America's claims.

Typically, when a non-movant does not attempt to make the requisite evidentiary showing, the reviewing court will render judgment dismissing the non-movant's claims. *See, e.g.*, *Elite Auto Body*, 520 S.W.3d at 206. On the other hand, when it appears that the trial court did not actually consider the motion as to the merits or as it relates to a particular party, the reviewing court may remand the case for consideration of the TCPA motion on the merits. *See Iola Barker v. Hurst*, No. 01-17-00838-CV, 2018 WL 3059795, at \*6 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.); *see also Reeves I*, 552 S.W.3d at 396; *Abatecola*, 2018 WL 3118601, at \*14 ("Remand is appropriate when a case, for any reason, has not been fully developed."). Here, it appears that the trial court did not actually consider Reeves's motion as it pertained to the merits of Harbor America's claims. The order denying Reeves's motion states: "Having so ruled [that the TCPA does not apply], there is no 'second step' analysis where the burden is shifted to [Harbor America] to make a *prima facie* case on the elements of its claim[s]." Because the trial court did not consider the merits of Harbor America's counterclaims in the first instance, this court will remand for further consideration. *See, e.g.*, *McManus v. Richey*, No. 10-16-00061-CV, 2016 WL 4703877, at \*6 (Tex. App.—Waco Sept. 7, 2016, no pet.) (mem. op. on reh'g) ("We therefore

decline [movant's] invitation to make a determination as to whether [non-movant] established by clear and specific evidence the essential elements of her defamation claims.  That determination should initially be made by the trial court."); *see also* *Abatecola*, 2018 WL 3118601, at \*14.

## Conclusion

We sustain in part Reeves's issue on appeal and conclude that the TCPA applies to Harbor America's counterclaims.  We reverse the trial court's order and remand the case for further proceedings in accordance with this opinion.

/s/     Ken Wise
Justice

Panel consists of Justices Wise, Bourliot, and Zimmerer (Zimmerer, J., dissenting).